[No. G013719. Fourth Dist., Div. Three. Mar. 3, 1995.]

LLOYD P. WIMSATT et al., Plaintiffs and Appellants, v. BEVERLY HILLS WEIGHT LOSS CLINICS INTERNATIONAL, INC. et al., Defendants and Respondents.

## COUNSEL

Waier & Urtnowski and Randall S. Waier for Plaintiffs and Appellants.

R. Patrick McCullogh, Saxon, Dean, Mason, Brewer & Kincannon, Bruce G. Holden, Rodney W. Bell, W. Charles Hughes and Lewis, D'Amato, Brisbois & Bisgaard for Defendants and Respondents.

## OPINION

**SILLS, P. J.**—California's Franchise Investment Law was intended for precisely this case. The law's statement of legislative intent declares that "California franchisees have suffered substantial losses where the franchisor or his representative has not provided full and complete information regarding the franchisor-franchisee relationship, the details of the contract between franchisor and franchisee, and the prior business experience of the franchisor." (Corp. Code, § 31001.) And that is, indeed, what the plaintiffs have alleged here: an out-of-state franchisor, rather misleadingly named Beverly Hills Weight Loss Clinics International, Inc., made a variety of false promises to induce them to plunk down large sums of money for the privilege of operating several weight loss clinics under the Beverly Hills name and trademark complete with palm tree silhouette.[1]

But this case is not quite as straightforward as matching statute to alleged facts. The franchisee plaintiffs signed an agreement with a forum selection

---

[1] At the time the franchise agreement was signed the defendant was based in Fredericksburg, Virginia, but presumably a civil war cannon would not convey quite the same feeling of slender chic.

clause which obligated them to sue in Virginia, the home base of the defendant franchisor. Yet a critical feature of California's Franchise Investment Law is an antiwaiver statute voiding any provision of a franchise agreement which forces a franchisee to give up any of the protections afforded by the law. (Corp. Code, § 31512.) This case presents the important issue, spared the court in *Lu* v. *Dryclean-U.S.A. of California, Inc.* (1992) 11 Cal.App.4th 1490 [14 Cal.Rptr.2d 906], of the validity of a forum selection clause in a franchise agreement in light of that antiwaiver statute.

Actually, the case is even less straightforward than that. Plaintiffs first filed a complaint alleging violations of California's Franchise Investment Law in federal court in San Diego, California. Applying federal procedural law, that court determined the plaintiffs had failed to meet their "heavy" burden of making a "strong" showing that enforcement of the forum selection clause would be "so gravely difficult and inconvenient" that they would, in practical effect, be deprived of "their day in court." Noting the plaintiffs had failed to scale this mountain, the federal court dismissed their complaint, albeit without prejudice to file again "in a proper forum."

The plaintiffs next turned to state court in Orange County, but lost there because the trial judge concluded that the plaintiffs were barred by the doctrine of collateral estoppel from challenging the validity of the forum selection clause. They now appeal from the subsequent order of dismissal.[2]

We reverse because the issue litigated in the federal proceeding is not identical to the one presented by this case. The federal court's ruling was a matter of federal procedural law, in which there is indeed a heavy burden of proof on the party opposing the enforcement of a forum selection provision. This action, by contrast, turns on state substantive law in which the burden is on franchisors to show that enforcement of a forum selection clause will not subvert substantive rights afforded California citizens. Different sovereignties, different rules, different burdens: no collateral estoppel. The case must be returned for consideration on the merits.

## FACTS

The plaintiffs are two couples and a single man living in Southern California. In December 1989, each of them signed a franchise agreement with Beverly Hills Weight Loss Clinics International, Inc., a Virginia corporation. Beverly Hills Clinics offered for sale franchised outpatient weight

---

[2]We treat the order of dismissal as the final judgment it was obviously intended to be. (See *Francis* v. *Dun & Bradstreet, Inc.* (1992) 3 Cal.App.4th 535, 539 [4 Cal.Rptr.2d 361].)

loss clinics and a line of dietary products. According to the complaint (that is, the complaint filed in the state trial court here), part of the inducement for the investment was the exclusivity of the franchisor's dietary products, its comprehensive training program for new franchisees, the experience of the franchisor's principals in the weight loss business, the expectation that plaintiffs would not need to expend any more than about $46,000 on their investment, and, perhaps most importantly, the absence of any litigation against the franchisor. In reality, at least as alleged, these representations were untrue. Similar dietary products were out on the market competing with the franchisor's, there was no real attempt at training, the franchisees were required to pay exorbitant markups for the franchisor's dietary products, there were unconscionable advertising fees and there were "numerous" court cases pending against the franchisor.

The franchise agreements each contained a forum selection clause, which, in pertinent part, provided: "The Franchisee hereby agrees that it will bring any suit to enforce his [*sic*] rights under this agreement only in a Virginia Court."

An addendum to the agreement modified the forum selection clause to make it look a little more reciprocal. That is, the franchisees still agreed to bring "any suit" to enforce their rights under the agreement "only" in a Virginia court, but also consented to the jurisdiction of any California court in the event that the franchis*or* brought suit to enforce *its* rights. There was nothing in the addendum, however, to *require* the franchisor to bring suit in California.

The final paragraph of the addendum also contained this choice of law provision: "In connection with any suit pursuant to Sections 21.1 [in which the franchisees consented to sue "only" in a Virginia court] or 21.2 [in which the franchisees consented to the jurisdiction of a California court if the franchisor sued them], Franchisor and Franchisee hereby agree that the laws of commonwealth of Virginia shall apply unless so prohibited under the laws of California."

In November 1990, plaintiffs filed an action against the franchisor in federal court for the Southern District of California in San Diego, alleging federal antitrust[3] and trademark claims and violations of the California Franchise Investment Law. Federal jurisdiction was predicated only on the presence of a federal question under trademark law. In March 1991, Judge

---

[3]The antitrust claims were based on the allegation that the franchisor was requiring its franchisees to buy certain dietary foods (basically milkshakes) for resale to their customers

Enright held that the complaint failed to state claims under federal law. Because no diversity jurisdiction had been alleged he exercised his discretion not to hear the pendent state claims under the Franchise Investment Law.

Plaintiffs tried again two months later, filing in May 1991 a second complaint in federal court in San Diego based on diversity jurisdiction. This time they ran smack-dab into the forum selection clause when the franchisor moved to dismiss for lack of proper venue. In January 1992, Judge Rhoades granted the motion in a formal five-page written order. Relying primarily on *Manetti-Farrow, Inc.* v. *Gucci America, Inc.* (9th Cir. 1988) 858 F.2d 509, he reasoned that parties opposing the enforcement of forum selection clauses bear a heavy burden of showing trial in the contract forum was "so gravely difficult and inconvenient" that they will be deprived of their day in court. Because the plaintiffs did not meet that "heavy" burden, the forum selection clause was "valid and enforceable." Judge Rhoades granted the motion, however, "without prejudice to the plaintiffs' bringing their suit in a proper forum."

Plaintiffs' next complaint was filed in March 1992 in state court in Orange County, California. Here they met with their usual lack of success, but for a slightly different reason—collateral estoppel. In November 1992 Judge Jameson determined that the issue of the "validity and enforceability" of the forum selection clause in the franchise agreement had been fully and fairly litigated in federal court, that order was binding, proper venue was in a Virginia court, and therefore the case should be dismissed.

DISCUSSION

Being a matter of *issue* preclusion, collateral estoppel is naturally confined to issues "actually litigated." (E.g., *Harman* v. *Mono General Hospital* (1982) 131 Cal.App.3d 607, 615 [182 Cal.Rptr. 570] ["central question" on application of collateral estoppel turned on whether public entity status of hospital was actually litigated in prior proceeding]; see also 7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 253, p. 692.)

A corollary is that the issue decided previously be "identical" with the one sought to be precluded. (See, e.g., *People* v. *Taylor* (1974) 12 Cal.3d 686, 691 [117 Cal.Rptr. 70, 527 P.2d 622] [need for issue decided at previous hearing to be "identical to the one which is sought to be relitigated"]; *Stolz*

directly from the franchisor, when the same products were commercially available at much cheaper prices.

v. *Bank of America* (1993) 15 Cal.App.4th 217, 222 [19 Cal.Rptr.2d 19] ["Collateral estoppel applies if (1) the issue decided in the prior case is identical with the one now presented . . . ."]; *Betyar* v. *Pierce* (1988) 205 Cal.App.3d 1250, 1254 [252 Cal.Rptr. 907] [quoting *Taylor* and finding in license revocation litigation that requirement for identical issue had not been fully satisfied where stipulation that motorist had completed alcohol test was entered in previous criminal drunk driving proceeding].)

Accordingly, where the previous decision rests on a "different factual and legal foundation" than the issue sought to be adjudicated in the case at bar, collateral estoppel effect should be denied. (*Bleeck* v. *State Board of Optometry* (1971) 18 Cal.App.3d 415, 428 [95 Cal.Rptr. 860] [refusing to accord collateral estoppel effect to previous mandate proceeding involving licensing of optometrist's branch office bottomed on the absence of a "sale" of office where current proceeding involved issue of "abandonment" of other offices].)

Of course, in determining whether the identity requirement is satisfied, courts must be mindful of the need to distinguish "issues" from "legal theories." (See *Pacific Mutual Life Ins. Co.* v. *McConnell* (1955) 44 Cal.2d 715, 724-725 [285 P.2d 636] [". . . the prior determination of an issue is conclusive in a subsequent suit between the same parties as to that issue and every matter which might have been urged to sustain or defeat its determination."]; *Bleeck* v. *State Board of Optometry, supra*, 18 Cal.App.3d at p. 429 [collateral estoppel binding on all matters which were raised or might have been raised].)

The distinction, however, is not always easy. (See 7 Witkin, Cal. Procedure, *supra*, Judgment, § 257, p. 698, quoting *Clark* v. *Lesher* (1956) 46 Cal.2d 874, 880 [299 P.2d 865].) Reference must be made to the pleadings and proof in each case. (*Ibid.*) We agree with Witkin that the best solution to the problem of making the distinction is to give to the idea of "issue" a "reasonable meaning." (See 7 Witkin, Cal. Procedure, *supra*, Judgment, § 257, p. 696.)

The present case turns on what was the exact "issue" that Judge Rhoades decided. Styling that issue as whether the forum selection clause was "valid and enforceable" is unreasonably broad. When we examine, as the *Bleeck* court put it, the "factual and legal foundation" of the prior decision, we find that what Judge Rhoades really decided was only whether plaintiffs had the right to sue in *federal* court in California.

The key to understanding Judge Rhoades's decision is the Ninth Circuit case of *Manetti-Farrow, Inc.* v. *Gucci America, Inc., supra*, 858 F.2d 509.

Citations to the case run throughout his order; it is obvious Judge Rhoades had the case open before him as he wrote.

In *Manetti-Farrow*, the United States distributor of a line of perfumes controlled by the marketing division of the Italian Gucci empire brought a diversity suit against the empire (and its various arms) in federal court in Northern California for a variety of contract and contract-related causes of action. The distributorship contract, however, designated Florence, Italy as the forum for resolution of any contract disputes between the parties. The federal district court held all of the distributor's claims were covered by the forum selection clause and dismissed the case; the distributor appealed.

In analyzing the case, the very first thing the Ninth Circuit considered was whether state or federal law applied to the forum selection question. (858 F.2d at p. 512 ["Our initial task is to decide whether state or federal law applies in our analysis of the effect and scope of the forum selection clause."].) The court then established that the question would turn on whether the matter of forum selection clauses was procedural or substantive. "The Supreme Court has explained that in diversity suits such as the case before us, federal district courts should apply state law to substantive issues, and federal law to procedural issues." (*Ibid.* [referring to "Erie doctrine" enunciated in *Erie Railroad* v. *Tompkins* (1938) 304 U.S. 64 (82 L.Ed. 1188, 58 S.Ct. 817, 114 A.L.R. 1487)].) However, the question was not a simple one: the court noted there is a split in the federal circuit courts on the point, with the Third Circuit holding that forum selection clauses are a "contract issue," therefore to be decided according to state substantive law, while the Eleventh Circuit had come to the conclusion such clauses are "procedural and therefore federal law applies." (*Manetti-Farrow, Inc.* v. *Gucci America, Inc., supra*, 858 F.2d at p. 512.)

The next step in *Manetti-Farrow*'s logic was to establish that the choice between federal and state law was best made by "balancing" respective state and federal interests. (858 F.2d at p. 513, citing *Byrd* v. *Blue Ridge Cooperative* (1958) 356 U.S. 525 [2 L.Ed.2d 953, 78 S.Ct. 893].) The balancing test set up the punch line: the federal interests outweighed the state ones. Congress had specifically enacted venue rules for the federal courts, and approved the adoption of federal rules of civil procedure articulating the basic principles of venue in the federal courts. If, in diversity actions, venue were governed by state law, the federal venue statute would be nugatory and the federal rules governing aspects of venue would be stripped of their legitimacy. (*Manetti-Farrow, Inc.* v. *Gucci America, Inc., supra*, 858 F.2d at p. 513 [relying on a long quotation from *Stewart Organization, Inc.* v. *Ricoh*

*Corp.* (11th Cir. 1987) 810 F.2d 1066, 1068].) The *Manetti-Farrow* court concluded, ". . . federal procedural issues raised by forum selection clauses significantly outweigh the state interests"; thus the federal procedural rule, articulated in *The Bremen* v. *Zapata Off-Shore Co.* (1972) 407 U.S. 1 [32 L.Ed.2d 513, 92 S.Ct. 1907], would control the question of the enforcement of the forum selection clause. (*Manetti-Farrow, supra,* 858 F.2d at p. 513.)

And what was the federal rule as articulated in *The Bremen*? Forum selection clauses are "*prima facie* valid, and are enforceable absent a strong showing by the party opposing the clause 'that enforcement would be unreasonable or unjust, or that the clause [is] invalid for such reasons as fraud or overreaching.' " (*Manetti-Farrow, Inc.* v. *Gucci America, Inc., supra,* 858 F.2d at p. 514, quoting *The Bremen* v. *Zapatta Off-Shore Co. supra,* 407 U.S. at p. 15 [32 L.Ed.2d at p. 523].) The opposing party has the burden of showing the contract forum to be so " 'gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.' " (*Manetti-Farrow, supra,* 858 F.2d at p. 515, quoting *The Bremen, supra,* 407 U.S. at p. 18 [32 L.Ed.2d at p. 525].) Applying this federal rule, the *Manetti-Farrow* court held that the American distributor did not meet its burden. The case involved a contract signed in Italy with an Italian corporation for the distribution of Italian goods. The idea that an Italian court might not safeguard the distributor's rights was "provincial" (quoting *The Bremen, supra,* 407 U.S. at p. 12 [32 L.Ed.2d at pp. 521-522]). The contract specifically listed Florence, Italy as the place where disputes over the contract should be resolved. The distributor was simply trying to change the bargain; the dismissal was affirmed. (*Manetti-Farrow, supra,* 858 F.2d at p. 515.)

Judge Rhoades hewed to the same analysis. He quickly noted that the federal rule enunciated in *The Bremen* was followed by the Ninth Circuit, restated the "gravely difficult test" complete with its burden on the party opposing the forum selection clause, and then concluded that *because* the plaintiffs had not met their *heavy* burden, the forum selection clause was "valid and enforceable." (The federal judge's exact words were: "Because the plaintiffs have not met their 'heavy' burden as outlined in *The Bremen* and *Manetti-Farrow,* I find that the forum selection clause is valid and enforceable.") Dismissal followed.

We have explained the basis for Judge Rhoades's decision at some length because it is easy to misread the scope of his statement that the forum selection clause here was "valid and enforceable." Judges Rhoades did *not* determine that the forum selection clause was "valid and enforceable" under

state substantive law: his order was limited to federal procedural law. As Judge Rhoades alluded to and *Manetti-Farrow* made explicit at length, the issue of the "validity" of forum selection clauses is, in federal law, a procedural one. Indeed, the very decision to use federal law was necessitated by a finding that federal procedural interests (such as Congress's specific formulation of venue rules) outweighed state interests. Judge Rhoades never determined that plaintiffs had no right to sue in state court in California, nor could he. By starting with federal procedural law, he could by definition never reach the question of the "validity" of the forum selection clause under the substantive law of California.

██ As we will now explain, the substantive law of California governing the "validity and enforceability" of forum selection clauses in franchise agreements presents an entirely different model than used by federal courts (at least in the Ninth Circuit). California law employs a different set of burdens arising out of a different set of considerations.

One of the most important protections California offers its franchisee citizens is an antiwaiver statute which voids any provision in a franchise agreement which waives any of the other protections afforded by the Franchise Investment Law. (Corp. Code, § 31512.)[4] A forum selection clause, however, carries the potential to contravene this statute by placing litigation in a forum in which there is no guaranty that California's franchise laws will be applied to a franchisee's claims. At the risk of sounding "provincial" (and in full awareness of the increasing trend toward the nationalization and internationalization of commerce), we note the fact remains that California's ability to *guarantee* that its franchisees enjoy the benefits of its Franchise Investment Law extends no farther than its own borders. (See *Reddy* v. *Tinkum* (1882) 60 Cal. 458, 466-467 [holding that warrants issued by county officers from a Nevada town mistakenly thought to be in California based on acts that took place in Nevada were void]; cf. *Modern Computer Systems* v. *Modern Banking Systems* (8th Cir. 1989) 871 F.2d 734, 742 (dis. opn. of Heaney, J.) ["The choice of law provision in the present case similarly affects the remedial reach of the Minnesota Franchise Act. It becomes in effect a waiver of all rights statutorily afforded to [the franchisee], a waiver rendered void by Minn.Stat. § 80C.21."].) If a forum selection clause places in-state franchisees in an out-of-state forum which uses some balancing test (or equivalent) to determine that the law of the out-of-state forum should be used in place of California's, then a forum selection clause in a franchise agreement will have effectively circumvented California's antiwaiver statute. Indeed, in a case involving the sale of securities, this court once went so

---

[4]All statutory references hereafter are to the Corporations Code unless otherwise noted.

far as to say that the possibility the out-of-state forum would apply its law even in the face of a California choice of law provision or stipulation was enough to render a forum selection clause unenforceable. (See *Hall* v. *Superior Court* (1983) 150 Cal.App.3d 411, 419 [197 Cal.Rptr. 757] [refusing to enforce Nevada forum selection clause in litigation arising out of securities transaction because a court there "might well apply Nevada law" even in the face of a California choice of law provision or stipulation].)[5]

Even if the out-of-state forum does choose to apply California substantive law to the efficacy of a franchisee's *claims*, there is still the matter of the franchisee's *remedy*. If an out-of-state forum applies a more restrictive set of remedies to a California franchisee's claims, the net effect again will have been to circumvent the antiwaiver statute, albeit to a lesser extent. The forum selection clause will have successfully diminished substantive rights the franchisee would otherwise enjoy.

As far as we are able to tell, the impact of the antiwaiver provision on forum selection clauses in franchise agreements is one of first impression. The topic was *not* addressed in *Lu* v. *Dryclean-U.S.A. of California, Inc.*, *supra*, 11 Cal.App.4th 1490. While *Lu* involved the issue of a forum selection clause in a franchise agreement, the court was spared the problem of the thorny relationship between the forum selection clause and the antiwaiver provision of the Franchise Investment Law. In *Lu*, the franchisee appellants presented but two arguments against the enforcement of the forum selection clause: (1) there was an insufficient connection between the case and chosen forum, and (2) the clause should not be enforceable by those defendants who were not parties to the agreement. (*Id.* at pp. 1493-1494.) The court never addressed the impact of the antiwaiver statute.

In enacting the Franchise Investment Law, our Legislature showed a special solicitude for franchisees in their dealings with franchisors. (*Keating*

---

[5]Our concern is no more provincial than that expressed by a federal court in Wisconsin, a state affording analogous protections for its franchisees. (See *Cutter* v. *Scott & Fetzer Co.* (E.D. Wis. 1981) 510 F.Supp. 905, 908 [choice of forum clause not enforced because federal court in franchisees' home state was "better prepared" to consider case governed by home state franchise law and there was no evidence that choice of forum clause had been specifically negotiated]; *Lulling* v. *Barnaby's Family Inns, Inc.* (E.D.Wis. 1980) 482 F.Supp. 318, 320-321 [unreasonable to enforce choice of forum clause in equipment lease where lease was only part of franchise relationship and in-state franchise law rendered out-of-state choice of law provision void].) Then again, a New Jersey state court saw no problem at all in enforcing a forum selection clause under circumstances which committed a case governed by New Jersey's Franchise Practices Act to the tender mercies of a Nebraska court. (See *Wilfred MacDonald* v. *Cushman* (1992) 256 N.J.Super. 58 [606 A.2d 407, 411] [rejecting argument that "only New Jersey courts are equipped to properly interpret and apply" New Jersey franchise law; ". . . we perceive no reason why the federal district court of Nebraska or Nebraska state courts could not do the same"].)

v. *Superior Court* (1982) 31 Cal.3d 584, 593-594 [183 Cal.Rptr. 360, 645 P.2d 1192] ["The California Legislature has determined that franchisees are in need of special protection in dealing with franchisors."].)[6] In light of this solicitude—and the need to prevent the easy circumvention of the antiwaiver statute—we must conclude that California law necessarily imposes a different set of burdens than those employed by the federal courts. In particular, a *heavy* burden on the *franchisee* to make a *strong* showing that enforcement of the forum selection clause would deprive the franchisee of his or her *day in court* (to use the language from *The Bremen*) is incompatible with the logic of the antiwaiver statute. If the burden were as stated in *The Bremen*, then litigation could take place in forums which might not apply California rights and remedies. The forum selection provision would become the effective equivalent of a choice of law provision stripping the franchisee of rights under California law. (See generally, *Hall* v. *Superior Court, supra*, 150 Cal.App.3d 411, 418 [denying enforcement of choice of forum clause where choice of law provision was void].)

Given California's inability to guarantee application of its Franchise Investment Law in the contract forum, its courts must necessarily do the next best thing. In determining the "validity and enforceability" of forum selection provisions in franchise agreements, its courts must put the burden on the franchisor to show that litigation in the contract forum will not diminish in any way the substantive rights afforded California franchisees under California law.

We are aware that in *Lu* v. *Dryclean-U.S.A. of California, Inc., supra*, 11 Cal.App.4th at page 1493, the court said both the United States and California Supreme Courts had "placed a heavy burden on a plaintiff seeking to defeat" a forum selection clause, requiring the plaintiff to "demonstrate that enforcement of the clause would be unreasonable under the circumstances of the case." (*Ibid.*, citing *The Bremen* v. *Zapata Off-Shore Co. supra*, 407 U.S. at p. 10 [32 L.Ed.2d at pp. 520-521]; and *Smith, Valentino & Smith, Inc.* v. *Superior Court* (1976) 17 Cal.3d 491, 496 [131 Cal.Rptr. 374, 551 P.2d 1206].)

This statement, however, necessarily refers to forum selection clauses *generally*, where there is no special body of substantive state law enacted for

---

[6]*Keating* also held that the antiwaiver provision of the Franchise Investment Law barred arbitration even when otherwise enforceable under the Federal Arbitration Act. (See *Keating* v. *Superior Court, supra*, 31 Cal.3d at pp. 599-604.) The United States Supreme Court subsequently held that such an application of the antiwaiver provision violated the supremacy clause. (*Southland Corp.* v. *Keating* (1984) 465 U.S. 1, 16 [79 L.Ed.2d 1, 15-16, 104 S.Ct. 852].)

the specific protection of the in-state plaintiffs. On that point, of course, there can be no quibble. Forum selection clauses *are* important in facilitating national and international commerce, and as a general rule should be welcomed. What we have in the present case, however (and, again, something that was not raised in *Lu*), is the problem of the interaction between a forum selection clause and certain specific protections enacted to benefit in-state investors. Neither case cited by *Lu* for its "heavy burden" statement involved the possibility that a forum selection clause might be used to circumvent state law.[7] It is one thing to say, as the court implied in *Smith, Valentino*, that as a *general* rule plaintiffs have the burden of showing that enforcement of forum selection clauses would be unreasonable. It is another to impose a heavy burden on plaintiffs to show they would be virtually without any remedy at all even when there is a body of state protections enacted for their specific benefit.[8]

The same division of the Court of Appeal that decided *Lu* also decided *In re Nathaniel P.* (1989) 211 Cal.App.3d 660 [259 Cal.Rptr. 555], a case which, despite its superficial dissimilarities with weight loss franchising, is really on point here. In *Nathaniel P.* the question of whether a father had physically and sexually abused his children was adjudicated against him at a jurisdictional hearing declaring his children dependents of the court. Later, at another hearing concerned with termination of his parental rights, the father was not, because of the findings made at the earlier hearing, allowed to testify that he had *not* physically and sexually abused his children. The refusal was error. *Nathaniel P.* squarely held that collateral estoppel effect should not have been given the earlier findings because they were made using a *different standard of proof than required for the later hearing.* At the jurisdictional hearing the standard was tougher against the father: the state had to show by only a preponderance of the evidence he had abused his children. At the termination hearing the state was required to show by clear

---

[7]*The Bremen* was an admiralty case in which an American oil exploration company solicited bids for the towing of an ocean-going oil rig. A German firm won the bid and submitted a contract with a forum selection clause designating the London Court of Justice. After the rig was damaged in a storm, however, the American firm sued in federal court in Florida. Obviously there was no contravention of any special protections afforded oil exploration companies in ultimately requiring the case to be tried in the United Kingdom.

Likewise *Smith, Valentino & Smith, Inc.* v. *Superior Court, supra,* 17 Cal.3d 491 only dealt with forum selection clauses generally. The case is important because it rejected the notion that forum selection clauses should be void as somehow "ousting" a state court of jurisdiction. (See *Smith, Valentino, supra,* 17 Cal.3d at p. 495.) And, while the court did indicate that the burden was on the plaintiffs to show that enforcement of the forum selection clause was "unreasonable," the court nowhere characterized even that burden in the same "heavy" tones as did *The Bremen.* (See *id.* at p. 496.)

[8]And, for the same reason, our remarks here are necessarily confined to forum selection clauses in franchise agreements.

and convincing evidence he had abused them. The difference in burdens was dispositive even though the same factual question was involved. (*Id.* at pp. 670, 672.)

 Likewise the difference in burdens is dispositive here. The earlier litigation in federal court in San Diego imposed a heavy burden on the plaintiffs to show that they would be without a "day in court" to escape the forum selection clause. As related above, the logic of the antiwaiver provision of California's Franchise Investment Law requires that the burden be on the defendant to show that litigation in the contract forum will not diminish any of the plaintiffs' rights under California law. The previous federal action therefore did not collaterally estop the plaintiffs from challenging the forum selection clause in state court.

It would be premature to reach the merits of the forum selection issue now. The question of whether the defendants will be able to carry their burden of showing that enforcement of the forum selection clause will not diminish plaintiffs' rights under the Franchise Investment Law was not developed in the trial court or in the briefing on appeal. The case must return to the trial court for that development.

### CONCLUSION

The order of dismissal is reversed. The case is remanded for further proceedings consistent with the views expressed in this opinion. In the interests of justice the parties will each bear their own costs on appeal.

Wallin, J., and Rylaarsdam, J.,* concurred.

---

*Judge of the Orange Superior Court sitting under assignment by the Chairperson of the Judicial Council.