**JACKSON HEWITT, INC., Plaintiff,**

v.

**J2 FINANCIAL SERVICES, INC., Joseph Petritsch, and Julie Dreibelbis, Defendants.**

No. 2:95cv197.

United States District Court,
E.D. Virginia,
Norfolk Division.

Oct. 5, 1995.

Carl Jay Khalil, Jackson Hewitt Inc., Virginia Beach, VA, for Plaintiff.

Brian Nelson Casey, Taylor & Walker, P.C., Norfolk, VA, for Defendants.

## OPINION

REBECCA BEACH SMITH, District Judge.

This case is before the Court on Defendants' Motion to Dismiss or Stay. Defendants present two arguments: (1) that the Court should abstain because the case involves unsettled issues of state law important to California public policy; and (2) that the Court should dismiss under the *Colorado River* doctrine of abstention in deference to ongoing litigation between the parties in California state court. *See Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976).

### I. Factual and Procedural Background

On September 6, 1991, Plaintiff Jackson Hewitt, Inc. ["Jackson Hewitt"] and Defendant J2 Financial Services, Inc. entered into a franchise agreement. J2 Financial Services, Inc. was represented by Joseph Petritsch, president, and Julie Dreibelbis, secretary [hereinafter collectively referred to as "J2"]. Under the agreement, Jackson Hewitt authorized J2 to operate retail tax preparation offices in the Anaheim, California area under the name "Jackson Hewitt." In return for a fee and a percentage of J2's gross receipts, Jackson Hewitt agreed to provide J2 with technical support and to ensure that its franchises in the area operated according to Jackson Hewitt's standards. In their written agreement, both parties consented "to personal and subject matter jurisdiction and venue in Norfolk, Virginia," and "to the jurisdiction of Virginia courts for any litigation relating to this Agreement or the operation of the Franchised Business thereunder." Jackson Hewitt Tax Service Franchise Agreement, ¶ 21 (Sept. 6, 1991). Moreover, the agreement was to "be governed by and interpreted in accordance with Virginia law, which law shall prevail in the event of any conflict of law." *Id.*

Jackson Hewitt and J2 entered into a second franchise agreement on December 22, 1992. This agreement was similar to the first but concerned territory located in Santa Ana, California. In the second agreement, J2 consented to personal jurisdiction in all Virginia state and federal courts and promised to sue Jackson Hewitt only in these Virginia courts, as long as that Virginia court had subject matter jurisdiction. Jackson Hewitt, however, remained free to initiate legal action against J2 in any forum with proper jurisdiction and venue. This second agreement likewise was to be governed and interpreted under Virginia law.

Despite the forum selection clauses in the two franchise agreements, J2 filed a complaint against Jackson Hewitt and John T. Hewitt in California state court on September 15, 1994. J2 alleged that Jackson Hewitt had: (1) breached its contracts with J2; (2) unlawfully converted funds; (3) violated the federal Racketeer Influenced and Corrupt Organization statute, 18 U.S.C. §§ 1961 *et seq.* ["RICO"]; (4) committed fraud; and (5) violated the California Franchise Investment Law. J2's only claim against John T. Hewitt appears to be the RICO cause of action.

Jackson Hewitt filed a Motion to Dismiss, contending that the forum selection clauses were enforceable and thus precluded J2's suit in California. The Orange County Superior Court agreed with Jackson Hewitt and dismissed the case.

Less than one week after this dismissal, the California Court of Appeals reversed and remanded a similar decision by the Orange County Superior Court. *Wimsatt v. Beverly Hills Weight Loss Clinics Int'l, Inc.*, 32 Cal. App.4th 1511, 38 Cal.Rptr.2d 612 (1995). In *Wimsatt*, the California Court of Appeals addressed the anti-waiver statute in California's Franchise Investment Law, which statute voids any provision in a franchise agreement that waives the protection offered franchisees under California law. The court reasoned that forum selection clauses which place California franchisees in courts outside the state may be used to circumvent California's anti-waiver statute. The court held that California courts should not enforce a forum selection clause, unless the franchisor can establish that litigation in the out-of-state forum would not diminish the franchisee's rights under California franchise law. *Id.*, 38 Cal.Rptr.2d at 618.

Following the *Wimsatt* decision, J2 filed an appeal from the Orange County Superior Court's dismissal order. In light of *Wimsatt*, however, the Orange County Superior Court agreed to reconsider its dismissal of J2's complaint against Jackson Hewitt, if J2 withdrew its appeal. J2 withdrew its appeal and a decision by the Orange County Superior Court on reconsideration is currently pending.

Jackson Hewitt brought this action against J2 on February 23, 1995, alleging that J2 breached its franchise agreements by failing to pay royalties, advertising fees, and accounts receivable, and by failing to open a Jackson Hewitt office at Montgomery Ward, 1351 West 17th Street, Santa Ana, California, as specified in the 1992 Franchise Agreement.[1] Jackson Hewitt seeks damages of $53,050.72 for its breach of contract claim, plus interest, costs, and fees.

On April 25, 1995, J2 filed counterclaims against Jackson Hewitt alleging: (1) breach of contract; (2) fraud and misrepresentation; (3) conversion; and (4) violations of the California Franchise Investment Law. J2 later filed a Motion to Dismiss or, in the alternative, Motion to Stay. J2 asserts the two abstention arguments addressed below in support of its motion. J2 does not contest the jurisdiction of this Court or the validity of the forum selection clauses in both franchise agreements.

## II. Analysis

■ Federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246. Abstention is, therefore, an exception to be applied only in extraordinary cases. *Id.* at 813, 96 S.Ct. at 1244. Despite a federal court's duty to adjudicate matters properly presented to it, the Supreme Court has recognized certain instances when a district court should abstain. In *Colorado River*, the Court identified three previously recognized cases in which abstention is appropriate: (1) cases requiring the court to decide a federal constitutional issue which may become moot after the determination of an unsettled issue of state law; (2) cases where the federal court is called upon to decide "difficult issues of state law bearing on policy problems of substantial public import;" and (3) cases where federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings. *Id.* at 813–17, 96 S.Ct. at 1244–46. The Court then created a new abstention doctrine for certain cases where parallel proceedings are ongoing in state court. *Id.* at 817–19, 96 S.Ct. at 1246–48.

In the present case, J2 argues that this Court should dismiss or stay the proceedings[2] because: (1) this case presents difficult

---

1. Jackson Hewitt's complaint also asserts breach of fiduciary duty and tortious interference with economic opportunity. This Court, by Order filed April 19, 1995, granted Jackson Hewitt's Motion for a Voluntary Dismissal of its breach of fiduciary duty claim with prejudice and its tortious interference claim without prejudice.

2. For purposes of *Colorado River* abstention, the distinction between a dismissal and a stay is somewhat artificial. The Supreme Court has

and important unresolved issues of California law which affect the state's public policy; and (2) parallel state proceedings are ongoing in California. These arguments will be addressed in turn.

## 1. Difficult and Important Issues of State Law

■ J2 contends that abstention is appropriate because this case involves important, unresolved issues under the California Franchise Investment Law. In support of its argument, J2 cites *Wimsatt v. Beverly Hills Weight Loss Clinics Int'l, Inc.,* 38 Cal. Rptr.2d 612. As previously stated, the California Court of Appeals held that the anti-waiver provision of California's franchise law prohibits the enforcement of a forum selection clause, unless the franchisor can prove that trial in the contract forum will not circumvent the franchisee's rights under California law. *Id.,* 38 Cal.Rptr.2d at 618. Whether *Wimsatt* applies in the California action between these parties is currently being considered by the Orange County Superior Court. If that court holds that *Wimsatt* does apply, then J2 will be allowed to sue Jackson Hewitt in California despite the forum selection clauses in the two franchise agreements. J2 moves this Court to abstain while the Orange County Superior Court determines whether *Wimsatt* requires that court to disregard the forum selection clauses and allow J2 to sue Jackson Hewitt in California.

■ The abstention doctrine asserted by J2 applies when a federal court is called upon to decide an unresolved *substantive* issue of state law which involves a serious matter of state policy transcending the dispute between the litigants. *Colorado River,* 424 U.S. at 814, 96 S.Ct. at 1244; *see generally,*

Wright, Miller, & Cooper, *Federal Practice and Procedure: Jurisdiction* § 4246 (1988). The doctrine only applies when the federal court must construe and apply unresolved substantive state law.

This Court is presented with no such question in the present case. The Orange County Superior Court will address a disputed issue of state law in the California case between these parties, namely whether J2 can sue Jackson Hewitt in California despite the clause in the 1992 franchise agreement limiting J2 to sue in Virginia. This Court, however, need not consider that state law issue. Even if J2 is permitted to sue Jackson Hewitt in California, Jackson Hewitt is likewise entitled, under the forum selection clauses, to sue J2 in this Court.[3] Moreover, the issue of whether J2 is entitled to sue Jackson Hewitt in California is not a *substantive* issue of law in this federal case. This Court can fully resolve the dispute between these parties without touching on this issue of California law. J2 does not contend that any other state law question in this federal case warrants abstention.

In summary, this is not an appropriate case for the Court to abstain on the grounds of unsettled state law, as this state law does not affect any substantive issues in this federal case. J2's Motion to Dismiss on this basis is, therefore, DENIED.

## 2. *Colorado River* Abstention

■ J2 next argues that the Court should abstain in deference to the ongoing California state proceeding between the parties. The general rule is "that the pendency of a state court proceeding is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *McClellan v. Carland,* 217 U.S. 268, 282, 30 S.Ct. 501, 505,

---

noted that in this context "a stay is as much a refusal to exercise federal jurisdiction as a dismissal." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 28, 103 S.Ct. 927, 943, 74 L.Ed.2d 765 (1982); *see also* Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 4247 (1988).

**3.** In the 1991 franchise agreement, both parties consented to be sued in Virginia. In the 1992 franchise agreement, J2 consented to sue Jackson Hewitt only in Virginia state and federal

courts, as long as subject matter jurisdiction existed in that court, while Jackson Hewitt could sue in any court with jurisdiction and venue. *See supra* at 2. J2 does not contend that these provisions are invalid or unenforceable or that this Court does not have personal and subject matter jurisdiction over the parties and the matter, respectively. *See supra* at 4. Consequently, Jackson Hewitt is entitled to sue J2 in this Court under both agreements.

54 L.Ed. 762 (1910); *McLaughlin v. United Virginia Bank,* 955 F.2d 930, 934 (4th Cir. 1992) ("with regard to parallel state and federal proceedings, the Supreme Court has held, over and over, as have we, that in the usual case the federal courts *must* hear the cases that fall within their jurisdiction"). In *Colorado River,* the Supreme Court recognized a limited exception to this general rule based on principles of "wise judicial administration" and "conservation of judicial resources." *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246. This exception allows a district court to abstain when: (1) parallel proceedings are ongoing in state court, and (2) exceptional circumstances counsel abstention. *Id.* at 817–19, 96 S.Ct. at 1246–48. As the Supreme Court noted in *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the task of the district court "is not to find some substantial reason for the *exercise* of federal jurisdiction ... rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest justifications,' that can suffice under *Colorado River* to justify *surrender* of that jurisdiction." *Id.* at 25–26, 103 S.Ct. at 941–43 (emphasis in original).

■ The Supreme Court has identified several factors that a district court may consider when determining whether exceptional circumstances warrant abstention in light of parallel state proceedings. These factors are: (1) whether the state court has exercised *in rem* jurisdiction over property involved in the dispute; (2) the relative inconvenience of the federal and state forums; (3) the desirability of avoiding piecemeal litigation; (4) the order of the state and federal suits; (5) whether a federal question is at issue; (6) the adequacy of the state court to protect the federal plaintiff's rights; and (7) whether the state or federal case was brought as a "defensive reaction" to the other. *Colorado River,* 424 U.S. at 818, 96 S.Ct. at 1246; *Moses H. Cone,* 460 U.S. at 17–18 n. 20, 23, 26, 103 S.Ct. at 937–38 n. 20, 23, 26; *see also McLaughlin,* 955 F.2d at 934–35.

The federal courts have been instructed not to use these factors as a "mechanical checklist," but rather to weigh each factor according to the circumstances of each case "with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone,* 460 U.S. at 16, 103 S.Ct. at 937; *see also Colorado River,* 424 U.S. at 819, 96 S.Ct. at 1247 ("only the clearest of justifications will warrant dismissal").

■ However, before considering the factors identified in *Colorado River* and *Moses H. Cone,* the Court must first determine whether parallel state and federal proceedings actually exist. *McLaughlin,* 955 F.2d at 935. The state and federal cases "are parallel if substantially the same parties litigate substantially the same issues in different forums." *New Beckley Mining Corp. v. International Union, United Mine Workers of America,* 946 F.2d 1072, 1073 (4th Cir.1991), *cert. denied,* 503 U.S. 971, 112 S.Ct. 1587, 118 L.Ed.2d 306 (1992).

■ Plaintiff Jackson Hewitt argues that here the federal and state cases are not parallel because its claims against J2 are not now before the California court. Plaintiff urges the adoption of a formalistic approach, with the court simply setting the two cases side-by-side to see whether they mirror each other at this stage of litigation. Because its claims against J2 are not currently before the state tribunal, Jackson Hewitt argues that the cases are not identical and therefore should not be considered parallel.

While Plaintiff's approach is appealing in its simplicity, it ignores the realities of litigation and constitutes an elevation of form over substance. It is true that Plaintiff's claims against J2 are not now pending in Orange County Superior Court; however, it is equally clear that were the Court to dismiss this action, Plaintiff would bring its claims in California. Jackson Hewitt's claims against J2 would almost certainly be considered compulsory cross-complaints under California Code of Civil Procedure § 426.30(a).[4] There-

---

4. Section 426.30(a) provides that:
   if a party against whom a complaint has been filed and served fails to allege in a cross-complaint any related cause of action which

... he has against the plaintiff, such party may not thereafter in any other action assert against the plaintiff the related cause of action not pleaded.

fore, if Jackson Hewitt failed to bring its claims against J2 in the California case, it would be unable to sue J2 on the same matters in a subsequent California proceeding. *Id.* Likewise, Jackson Hewitt would be barred from bringing those claims in a later case in federal court. *See, e.g., Springs v. First Nat'l Bank of Cut Bank,* 835 F.2d 1293, 1296 (9th Cir.1988) (barring mortgagee from asserting a claim in federal court which should have been pled as a compulsory counterclaim in an earlier state court proceeding); *Chapman v. Aetna Finance Co.,* 615 F.2d 361, 364 (5th Cir.1980) (barring plaintiff from bringing a claim in federal court which should have been brought as a compulsory counterclaim in a prior Georgia proceeding, the court "[d]ecline[d] to sanction the very repetitious litigation that both our and Georgia's compulsory counterclaim rules were intended to prevent"); *see also* Wright, Miller, and Kane, *Federal Practice and Procedure: Civil 2d* § 1417 (1990). Because Jackson Hewitt would be faced with the choice of either bringing its claims against J2 in California or losing them, it is extremely probable that Jackson Hewitt would sue J2 in California, if this Court were to dismiss. When Jackson Hewitt counterclaimed in California, that case would become nearly identical to this proceeding with "substantially the same parties litigat[ing] substantially the same issues." *New Beckley Mining Corp.,* 946 F.2d at 1073.

Other courts have concluded that federal and state cases may be parallel despite the fact that the cases are not currently mirror images. For example, in *Bagdan v. Sony Corp. of Am.,* 767 F.Supp. 81 (D.Vt.1991), the federal plaintiff brought two claims in federal court which it had not brought as counterclaims in a pending state court case. *Id.* at 83. The court reasoned that because those two claims were compulsory counterclaims in the state proceeding, the federal and state cases were parallel for purposes of *Colorado River* abstention. *Id.*

Likewise, in *Holland v. Hay,* 840 F.Supp. 1091 (E.D.Va.1994), the federal plaintiff asserted a claim which was not brought in the state case. *Id.* at 1099. Because the plaintiff's claim was a compulsory counterclaim

under state law, this Court found the cases to be "substantially similar, if not identical." *Id.* at 1100. As the Seventh Circuit has observed, "we look not for formal symmetry between the two actions, but for a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Lumen Constr., Inc. v. Brant Constr. Co., Inc.,* 780 F.2d 691, 695 (7th Cir.1985). In the case at bar, although the federal and state proceedings are not currently identical, the state litigation would almost certainly resolve all the disputes between these parties were this Court to dismiss. The cases should, therefore, be considered parallel.

██ Having determined the existence of duplicitous state proceedings, this Court must now consider whether "exceptional circumstances" justify abstention. *Colorado River,* 424 U.S. at 813, 96 S.Ct. at 1244. Each of the abstention factors identified in *Colorado River* and *Moses H. Cone* are discussed below as they apply in this case.

### a. Whether the state court has exercised *in rem* jurisdiction over property involved in the dispute.

In this case, the California court has not exercised *in rem* jurisdiction over any disputed property. This factor, therefore, does not support abstention.

### b. The relative inconvenience of the federal and state forums.

Convenience includes the "relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947), *cited with approval in Colorado River,* 424 U.S. at 818, 96 S.Ct. at 1246. Defendants point out that they are California citizens doing business solely in their home state, while Jackson Hewitt is a national tax preparation chain which took deliberate steps to enter the California market and specifically reserved the right, in the franchise agreements, to initiate legal action against J2 in California. Therefore, Defendants contend that the state forum is more convenient for Jackson Hewitt than the fed-

eral forum is for J2. Plaintiff responds that the California forum is as inconvenient to it as the Virginia forum is to Defendants, as Jackson Hewitt is headquartered in Virginia Beach, Virginia. Neither party suggests that one forum is more convenient than the other in terms of witness participation.

With Jackson Hewitt based adjacent to the federal forum and J2 based adjacent to the state forum, the inconvenience factor does not favor either party. While litigation in California is more convenient for J2, trial in Norfolk would be more convenient for Jackson Hewitt. The fact that Jackson Hewitt is a national chain may be relevant, but J2 has offered no reason why this fact makes the California forum less inconvenient for Jackson Hewitt than the Virginia forum is for J2. From the record before this Court, it appears that Jackson Hewitt's only connections with California are franchise agreements with various California corporations. These agreements will not make litigation in California any easier for Jackson Hewitt than litigation in Virginia will be for J2.

Furthermore, J2 could be said to have waived any objection to the inconvenience of the Virginia forum by consenting, in the franchise agreements, to be sued in this Court. See Ingersoll–Rand Financial Corp. v. Callison, 844 F.2d 133, 137 (3rd Cir.1988) ("The significance of the choice of forum clause ... is that the clause evidences a waiver by [defendant] of any objection to the inconvenience of the federal forum.").

### c. The desirability of avoiding piecemeal litigation.

■ The Court in *Colorado River* emphasized the importance of this factor. 424 U.S. at 819, 96 S.Ct. at 1247. The policy behind avoiding piecemeal litigation directly relates to the justification of abstention based on duplicitous state proceedings, namely "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* at 817, 96 S.Ct. at 1246 (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.*, 342 U.S. 180,

183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952)). When addressing this factor a court may consider whether all claims can be properly adjudicated in the state and federal forums and whether all parties are amenable to process. *See Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495, 62 S.Ct. 1173, 1176, 86 L.Ed. 1620 (1942), *cited with approval in Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1246. In other words, can either the state or federal forum resolve the entire dispute between all interested parties so that litigation in different courts will be unnecessary to conclude the conflict?

It would be desirable, in the interest of preserving judicial resources, for Jackson Hewitt and J2 to litigate all their claims against each other in a single case, avoiding piecemeal litigation in California and Virginia. It does not appear, however, that dismissal by this Court would advance the goal of efficient judicial administration. Litigation here could fully resolve the conflict between Jackson Hewitt and J2. All parties are amenable to process here, and all claims between the parties are either before this Court or may be easily brought here.[5] The goal of avoiding piecemeal litigation, therefore, does not support abstention in this case.

### d. The order of the federal and state suits.

J2 filed its complaint against Jackson Hewitt in Orange County Superior Court on September 15, 1994. Jackson Hewitt filed the present action five months later on February 23, 1995. J2 acknowledges, however, that "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21, 103 S.Ct. at 939 ("[t]his factor ... is to be applied in a pragmatic, flexible manner"). In *Colorado River*, for instance, the federal complaint was filed first, but this factor was considered one supporting abstention because no actions had been taken in district court other than filing the complaint. 424 U.S. at 820, 96 S.Ct. at 1248;

---

**5.** J2's RICO claim is the only one pending in the California court which is not pending in this Court. J2 could, however, simply amend its counterclaims to add the RICO cause of action, if it chooses to do so.

*Moses H. Cone,* 460 U.S. at 21–22, 103 S.Ct. at 939–41.

Under this factor, the Court must compare the California case with the federal case to determine which has progressed further. Here, the federal case has proceeded slightly further than the California suit. While no action has been taken in California, other than to dismiss the case and now to reconsider that dismissal, discovery has already begun in federal court. This factor thus does not support abstention.

#### e. Whether a federal question is at issue.

The Supreme Court in *Moses H. Cone* introduced this factor on the principle that federal courts should be less willing to surrender jurisdiction when a federal question is involved in the case. 460 U.S. at 25–26, 103 S.Ct. at 941–43 ("the presence of federal-law issues must always be a major consideration weighing against surrender"). The Court additionally recognized that "in some rare circumstances the presence of state-law issues may weigh in favor of surrender." *Moses H. Cone,* 460 U.S. at 26 and n. 29, 103 S.Ct. at 942 and n. 29 (noting the *Colorado River* case, where a federal statute clearly stated a policy in favor of state courts deciding the issue of water rights).

In the present case, no federal law is involved. The parties agreed that the franchise agreements would be governed by Virginia law, and, in addition, J2 has counterclaimed under California law. However, J2 has presented no federal policy favoring state court adjudication of these state law issues as there was in *Colorado River. See Moses H. Cone,* 460 U.S. at 26 and n. 29, 103 S.Ct. at 942 and n. 29. Apparently no "rare circumstances" are involved in this case favoring surrender based on the existence of state law issues. Because this Court is perfectly capable of interpreting state law, the fact that it is called upon to apply California and Virginia law does not support abstention.

#### f. The adequacy of the state court to protect the federal plaintiff's rights.

This factor addresses whether the state court will adequately protect the federal plaintiff's rights and provide full relief. *Moses H. Cone,* 460 U.S. at 26, 103 S.Ct. at 942. Plaintiff offers no reason, other than the fact that its claims are not now before the California court, why that court could not adequately protect its rights. Furthermore, Plaintiff seeks no extraordinary relief which the California court would be unable to grant.

However, a danger does exist that the California court will be unable to adequately protect Plaintiff's rights under the franchise agreements. These agreements are, by their terms, governed by Virginia law. The California court is likely to be unfamiliar with Virginia law, having little or no opportunity to apply it. This Court, on the other hand, located in the state of Virginia, is familiar with the state's law, and is in a better position to interpret the agreements between these parties under Virginia law. Therefore, Plaintiff's rights under the franchise agreements are better protected in this Court than in the California court and this factor weighs against abstention.

#### g. Whether the state or federal case was brought as a "defensive reaction" to the other.

In *Moses H. Cone,* the Supreme Court noted merit in the lower court's consideration of the "vexatious or reactive nature of either the federal or the state litigation" when deciding whether to abstain in light of a parallel state case. 460 U.S. at 17–18 n. 20, 103 S.Ct. at 937–38 n. 20. A stay on this basis is meant to deter litigants from using the federal courts in bad faith for harassment. Although the Supreme Court made these comments in *dictum,* the Fourth Circuit has adopted them as a separate factor. *McLaughlin,* 955 F.2d at 935.

Neither Jackson Hewitt nor J2 allege that the other sued in bad faith. Jackson Hewitt only brought its claim in this Court after having made a special appearance in California and filing a Motion to Dismiss that action. It does not appear that Jackson Hewitt is improperly using the federal courts in this matter. Thus, this factor does not support abstention.

### 3. Summary

Having considered the *Colorado River– Moses H. Cone* factors as they apply in this case, in light of the serious obligation of federal courts to retain jurisdiction in all but the most extraordinary instances, the Court holds that this case does not present exceptional circumstances warranting surrender of jurisdiction. The California court has not exercised *in rem* jurisdiction over disputed property. The federal forum is no more inconvenient for J2 than the California forum is for Jackson Hewitt. The policy against piecemeal litigation will not be frustrated by retention of jurisdiction because the entire case is before this Court. This federal action has proceeded somewhat further than the state case. Although no federal question is involved in the dispute, no circumstances exist which suggest that this Court should not decide the state law issues raised by the parties. This Court is more familiar with Virginia law than the California court. Finally, Plaintiff did not bring this action as a defensive reaction to J2's suit in California. This case presents no extraordinary circumstances warranting abstention, only the typical difficulties arising when parallel suits are ongoing in state and federal court.

To the contrary, because J2 agreed to be sued in this Court during an arm's-length negotiation, special circumstances in this case favor *retention* of jurisdiction. Jackson Hewitt and J2 entered into two franchise agreements, both of which contained forum selection clauses. In both, J2 consented to be sued by Jackson Hewitt in this Court. These forum selection clauses were part of an arm's-length bargain between two corporations. J2 has not suggested, nor does this Court find, any fraud or overreaching on the part of Jackson Hewitt in obtaining J2's consent to the Virginia forum. These clauses are, therefore, enforceable. *See The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 12, 92 S.Ct. 1907, 1914, 32 L.Ed.2d 513 (1971) (holding that when a "choice of forum was made in an arm's-length negotiation by experienced sophisticated businessmen, and absent some compelling and countervailing reason it should be honored by the parties and enforced by the courts").

Despite these enforceable forum selection clauses, J2 sued Jackson Hewitt in California. The California legislature and courts apparently disfavor forum selection clauses which result in its franchisees' claims being heard out-of-state, and consequentially may allow J2 to bring its action in California. *See Wimsatt*, 38 Cal.Rptr.2d at 618. But, the fact that California may want to hear a case, does not allow a federal court to disregard an enforceable forum selection clause.

If the Court were to embrace J2's position and abstain, California would have effectively reached into another jurisdiction and imposed its franchise law where it has no power to do so. *See id.* (acknowledging California's inability to apply its franchise law in the contract forum). While this Court has no obligation to support California's policy in favor of its franchisees, this Court does have a duty to see that valid contractual provisions, like the forum selection clauses in this case, are enforced when both personal and subject matter jurisdiction exist in this Court. These considerations dictate that this Court hear this matter.

### III. Conclusion

The Court in this action has not been called upon to decide any unresolved, substantive issues of state law. The only unresolved state law issue in contention is whether the California courts will hear a case between these parties. *See Wimsatt*, 38 Cal. Rptr.2d at 618. This issue need not be addressed by this Court and in no way bears on any substantive law in the case. The Court, therefore, DENIES Defendants' Motion to Dismiss or Stay based on unsettled state law.

The Court further concludes that this case, while parallel with the California action between the parties, does not present any exceptional circumstances warranting abstention under the *Colorado River* doctrine. *See Colorado River*, 424 U.S. at 813, 96 S.Ct. at 1244; *Moses H. Cone*, 460 U.S. at 15–16, 103 S.Ct. at 936–37. Moreover, the circumstances of this case counsel retention of jurisdiction by the Court. The parties here entered into two valid contracts, both containing enforceable forum selection clauses. The fact that the California courts may disregard

these clauses, does not relieve this Court of its obligation to protect Jackson Hewitt's rights under the contracts, including its right to bring suit against J2 in this Court. To dismiss this action in deference to the California case would constitute a breach of this Court's duty to enforce these contract rights. Accordingly, the Court DENIES Defendants' Motion to Dismiss based on duplicitous state litigation.

The Clerk is DIRECTED to send a copy of this Opinion to counsel for Plaintiff and Defendants.

It is so ORDERED.