[No. A109509. First Dist., Div. Five. Nov. 3, 2006.]

DAVID O. THUESON, Plaintiff and Appellant, v.
U-HAUL INTERNATIONAL, INC., et al., Defendants and Respondents.

666

## Counsel

Bradford C. Floyd for Plaintiff and Appellant.

Fulbright & Jaworski, James R. Evans, Jr., and David M. Liu for Defendants and Respondents.

## Opinion

**BRUINIERS, J.**[*]—Following trial by the court, judgment was entered against plaintiff and appellant David O. Thueson and in favor of defendants and respondents U-Haul Co. of California (doing business as U-Haul Co. of San Francisco) (U-Haul), on appellant's claims that his dealership agreement was improperly terminated. His claims rested on the premise that the dealership agreement was a franchise, subject to the provisions of the California Franchise Investment Law (CFIL) (Corp. Code, § 31000 et seq.), and the California Franchise Relations Act (CFRA) (Bus. & Prof. Code, § 20000 et seq.).[1] Appellant contends that the trial court erred when it found that there was no franchise agreement within the meaning of the CFIL or the CFRA.

---

[*] Judge of the Superior Court of Contra Costa County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] The CFIL protects consumers in the sale of franchises, and the CFRA regulates certain events after the franchise relationship has been formed. (*Gentis v. Safeguard Business Systems, Inc.* (1998) 60 Cal.App.4th 1294, 1298 [71 Cal.Rptr.2d 122] (*Gentis*).)

Appellant also appeals from an earlier grant of summary judgment in favor of defendant U-Haul International, Inc. (UHI), on the grounds that it was not a party to the contract in dispute.

We find no error in either ruling, and affirm.

## I. *FACTS AND PROCEDURAL HISTORY*

### A. *The Dealership Agreement Between Appellant and U-Haul*

Appellant and his wife operated a business in McKinleyville, California under the name Action Rental, selling and renting party and wedding supplies, lawn and garden equipment, tools, and other miscellaneous items. On October 23, 1997, appellant entered into a written U-Haul Dealership Contract (Contract) with U-Haul. Under the terms of the Contract, appellant served as a local agent and dealer for U-Haul, renting to the public various U-Haul products, including vehicles, trailers and related items, primarily used for transportation of household goods. The Contract provided for termination by either party on 30 days' notice, with or without cause.[2] Appellant paid no direct fees to U-Haul at the time of execution of the Contract or at any time thereafter. Appellant collected rental fees from the customers, which he then forwarded to U-Haul, receiving commissions on each rental, with gross revenues of approximately $18,000 to $20,000 per year from rental of U-Haul items.

### B. *Termination of the Contract*

For reasons not relevant here, the business relationship between appellant and U-Haul deteriorated and, on September 2, 2003, U-Haul gave appellant a 30-day notice of termination of the dealership, as provided in the Contract. Appellant brought this lawsuit against U-Haul, UHI, and several individual defendants challenging the termination of his dealership, contending, inter alia, that the Contract was a franchise subject to the CFIL and the CFRA,[3] thereby requiring "good cause" for termination.[4]

---

[2] Appellant testified that he previously had a U-Haul dealership in San Diego with a similar contractual provision, which he had exercised.

[3] Appellant also asserted causes of action for conspiracy, breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, intentional interference with prospective economic advantage, intentional infliction of emotional distress, and violations of the unfair competition law (UCL). (Bus. & Prof. Code, § 17200 et seq.)

[4] "Except as otherwise provided by this chapter, no franchisor may terminate a franchise prior to the expiration of its term, except for good cause. Good cause shall include, but not be limited to, the failure of the franchisee to comply with any lawful requirement of the franchise agreement after being given notice thereof and a reasonable opportunity, which in no event need be more than 30 days, to cure the failure." (Bus. & Prof. Code, § 20020.)

### C. *Trial Court Proceedings*

On May 10, 2004, the trial court granted the motion of all defendants for judgment on the pleadings as to appellant's claims for conspiracy, interference with contract, breach of fiduciary duty, and breach of the implied covenant of good faith and fair dealing. On November 9, 2004, the court granted UHI's motion for summary judgment, on the grounds that UHI was not a party to the Contract, and that appellant's related causes of action against UHI also failed as a result. On November 15, 2004, the matter proceeded to trial by the court, sitting without a jury, as to defendant U-Haul only.[5] The trial court found no franchise fee had been imposed by U-Haul, and that therefore appellant's dealership did not meet the definition of a franchise under the CFIL or the CFRA. Finding this issue dispositive of all causes of action in the complaint, the court entered judgment against appellant and in favor of U-Haul. This appeal followed.

## II. *DISCUSSION*

As appellant acknowledges, the central issue before this court is whether appellant's U-Haul dealership was a franchise. If it was not, appellant's other causes of action against U-Haul were properly resolved against him, and he admits that his claims against UHI also fail, rendering moot the grant of summary judgment to UHI.

### A. *Standard of Review*

We do not exercise de novo review as to the trial court's factual findings, and we may only review the record for substantial evidence. " 'A judgment or order of the lower court is presumed correct. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' [Citations.]" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193], italics omitted.) The trial court's factual findings are binding upon us if they are supported by substantial evidence. (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 630–631 [85 Cal.Rptr.2d 386].) Of course, as to any purely legal issues, we exercise de novo review. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799–801 [35 Cal.Rptr.2d 418, 883 P.2d 960].)

---

[5] Appellant dismissed his complaint during trial as to the remaining individual defendants.

## B. *Appellant Paid No Franchise Fee*

The trial court found that no franchise fee had been imposed by U-Haul as a condition of the dealership Contract with appellant, and as a consequence the dealership Contract did not meet the definitional requirements of a franchise agreement under California law. The factual finding was that, "Nothing was paid or invested for the dealership."

■ Under the CFIL and the CFRA, a franchise is a contract or agreement, either express or implied, whether oral or written, by which (1) a franchisee is granted the right to engage in a marketing system substantially prescribed by the franchisor; (2) the business is substantially associated with the franchisor's trademark or other commercial symbol; and (3) the franchisee is required to pay a franchise fee. (Corp. Code, § 31005, subd. (a); Bus. & Prof. Code, § 20001, subds. (a), (b) & (c); *Gentis, supra,* 60 Cal.App.4th at p. 1297; *Lads Trucking Co. v. Sears, Roebuck and Co.* (C.D.Cal. 1987) 666 F.Supp. 1418, 1420 *(Lads Trucking)*; 9 Witkin, Summary of Cal. Law (10th ed. 2005) Corporations, § 457, pp. 1195–1196.)

As one commentator has noted, the components of the definition of "franchise" in Corporations Code section 31005, subdivision (a) pinpoint various aspects of the particular business relationship that constitute a franchise. Only when all components are present can a franchise actually be found to exist. (Root, *The Meaning of "Franchise" Under the California Franchise Investment Law: A Definition in Search of a Concept* (1999) 30 McGeorge L.Rev. 1163.)

Since failure to satisfy any statutory element of the franchise definition is fatal to appellant's claims, and is thereby dispositive of all other issues presented, we look to the trial court's finding that appellant paid no franchise fee in this case, and to whether that finding is supported by substantial evidence.

■ A "franchise fee" is defined as "any fee or charge that a franchisee or subfranchisor is required to pay or agrees to pay for the right to enter into a business under a franchise agreement, including, but not limited to, any payment for goods and services." (Corp. Code, § 31011; Bus. & Prof. Code, § 20007.) Corporations Code section 31011 excludes (a) "[t]he purchase or

agreement to purchase goods at a bona fide wholesale price if no obligation is imposed upon the purchaser to purchase or pay for a quantity of the goods in excess of that which a reasonable businessperson normally would purchase by way of a starting inventory or supply or to maintain a going inventory or supply. [¶] (b) The payment of a reasonable service charge to the issuer of a credit card by an establishment accepting or honoring that credit card. [¶] (c) Amounts paid to a trading stamp company . . . ." Business and Professions Code section 20007 contains similar exclusions, and also excludes any payment of a fee not exceeding $100 annually (Bus. & Prof. Code, § 20007, subd. (d)),[6] and payment of not over $1,000 annually for purchase or rental of fixtures, equipment, or other tangible property for use in the business, if the price or rental does not exceed the ordinary cost of acquisition. (Bus. & Prof. Code, § 20007, subd. (e).)

Thus, subject to certain exceptions not relevant here, in order for a business relationship to legally constitute a "franchise" governed by the provisions of the CFIL or CFRA, a franchise fee of more than $100 must have been paid for the franchise rights. (Corp. Code, § 31005; Bus. & Prof. Code, § 20007, subd. (d); see *Gentis, supra,* 60 Cal.App.4th at p. 1297; *Lads Trucking, supra,* 666 F.Supp. at p. 1420.) The Commissioner of the Department of Corporations has also issued guidelines for determining whether an agreement constitutes a franchise. (Cal. Dept. of Corporations, When Does An Agreement Constitute A "Franchise?" (Release 3-F (rev.) June 1994) (Guidelines).) While the responsibility for statutory interpretation ultimately rests with the court, the Guidelines, as interpretation of a statute by the officials charged with its administration, are entitled to great weight. (*People v. Kline* (1980) 110 Cal.App.3d 587, 593 [168 Cal.Rptr. 185]; *City and County of San Francisco v. State of California* (1978) 87 Cal.App.3d 959, 965 [151 Cal.Rptr. 469]; see also Bus. & Prof. Code, § 20009.[7] The Guidelines confirm that the payment of a franchise fee is a necessary element of a franchise, and that the broad definition of "franchise fee" contained within Corporations Code section 31011 includes "any fee or charge that a franchisee or subfranchisor is required to pay [to the franchisor or an affiliate of the franchisor] for the right to enter into business" regardless of the designation given to, or the form of, such payment. Whether or not a fee or charge is "required" and

---

[6] Payment of an annual fee of $500 or less under the CFIL is not considered a franchise fee. (Cal. Code Regs., tit. 10, § 310.011.)

[7] "The regulations, releases, guidelines and interpretive opinions of the Commissioner of Corporations under the Franchise Investment Law (Division 5 (commencing with Section 31000) of Title 4 of the Corporations Code) regarding whether or not an agreement constitutes a 'franchise' within the meaning of that law shall be prima facie evidence of the scope and extent of coverage of the definition of 'franchise' under this chapter . . . ." (Bus. & Prof. Code, § 20009.)

whether it is made "for the right to enter into a business," is considered a mixed question of fact and law. (Guidelines, ¶ 4(a).) The term "franchise fee" is not further defined in either the CFIL or the CFRA, or in the Guidelines, and it does not appear that any published California authority has directly addressed the issue of what does, and what does not, constitute a "franchise fee."

Other jurisdictions, interpreting similar statutory provisions, have emphasized the element of investment in determining what constitutes a franchise fee. In *Wright-Moore Corp. v. Ricoh Corp.* (7th Cir. 1990) 908 F.2d 128 (*Wright-Moore*), the Seventh Circuit, applying Indiana's franchise laws, noted that the purpose of most franchise laws is to protect franchisees who have unequal bargaining power once they have made a firm-specific investment in the franchisor, and therefore the reason for the franchise fee requirement is to ensure that only those entities that have made a firm-specific investment are protected under the franchise laws. (*Id.* at p. 135.) Where there is no investment, there is no fear of inequality of bargaining power. (*Id.* at pp. 135–136.) The court rejected plaintiff's claims that ordinary business expenses could be considered indirect franchise fees in the absence of a showing of an unrecoverable investment in the distributorship. As in our statutes, the Indiana code defines a franchise fee as a fee paid for the right to do business,[8] not as costs paid during the course of business. (908 F.2d at p. 136.)

Similarly, in a case cited by respondent, the United States District Court for the Eastern District of Michigan, interpreting the "fee" requirement of Michigan's similar franchise law[9] held that failure to show expenses that constitute an unrecoverable firm-specific investment, creating a superior bargaining position, was fatal to the plaintiff's claims that it had paid a franchise fee. (*Watkins & Son Pet Supplies v. Iams Co.* (E.D.Mich. 1995, No. 94-70379) 1995 U.S.Dist. Lexis 7111, 9–13.) Washington's Franchise Investment Protection Act[10] has been interpreted in the same fashion. (*Bryant*

---

[8] Indiana defines a franchise fee as any fee that a franchisee is required to pay directly or indirectly for the right to conduct a business to sell, resell, or distribute goods, services or franchises under a contract agreement, including, but not limited to, any such payment for goods or services. (Ind. Code, § 23-2-2.5-1, subd. (i).)

[9] " 'Franchise fee' means a fee or charge that a franchisee or subfranchisor is required to pay or agrees to pay for the right to enter into a business under a franchise agreement, including but not limited to payments for goods and services." (Mich. Comp. Laws Ann., § 445.1503(3)(1).)

[10] A franchise fee is defined under the Washington Franchise Investment Protection Act as "any fee or charge that a franchisee . . . is required to pay or agrees to pay for the right to enter into a business or to continue a business under a franchise agreement." (Wash. Rev. Code, § 19.100.010(12).)

*Corp. v. Outboard Marine Corp.* (W.D.Wash. 1994) 1995-1 TradeCas. (CCH) ¶ 70,903 [1994 U.S.Dist. Lexis 18371] [holding that ordinary business expenses for services rendered were not franchise fees]; see also *Schultz v. Onan Corp.* (3d Cir. 1984) 737 F.2d 339, 345 [interpreting Minnesota's franchise law in the same way].)[11]

The Federal Trade Commission (FTC) in defining "franchise" in its franchise disclosure rule[12] likewise includes the required payment of a franchise fee, emphasizing the need for protection of those investors who assume significant financial risk by making a personally significant monetary investment upon entering into a franchise. Implicit in the concept of franchising, as viewed by the FTC, is the assumption of a financial risk by a franchisee in entering into a franchise relationship.

■   Our statutes set a low financial threshold for payments that may be considered franchise fees ($100 under the CFRA [Bus. & Prof. Code, § 20007, subd. (d)] and $500 annually under the CFIL [Cal. Code Reg., tit. 10, § 310.011]). Nevertheless, those California cases that have interpreted the CFIL, while urging a broad reading of the statutes to achieve the legislative intent, have still noted that it is investors that the law seeks to protect. In *Kim v. Servosnax, Inc.* (1992) 10 Cal.App.4th 1346, 1355–1356 [13 Cal.Rptr.2d 422] (*Servosnax*) the court discussed statutory interpretation of the CFIL, noting that with regard to the statutory definition of "franchise," "each element should be construed liberally to broaden the group of *investors* protected by the law and to carry out the legislative intent." (*Servosnax, supra,* at p. 1356, italics added; see also *Gentis, supra,* 60 Cal.App.4th at p. 1298.) The court in *Gentis* likewise considered the legislative history of the CFIL, and discussed the legislative intent to protect individuals from loss of their *investments* in franchises (citing the then Comr. of the Dept. of Corporations Anthony R. Pierno's article, *Franchise Regulation—The Need for a New Approach* (Sept. 1969) L.A. Bar Bull., p. 501). (*Gentis, supra,* at p. 1299.) In sum, even though it is clear that we are required to construe the CFIL and the CFRA broadly to carry out legislative intent, that intent, as discussed in *Servosnax* and *Gentis,* is to protect franchise *investors*—i.e., those who "pay for the right to enter into a business."

---

[11] A franchise fee is "any fee or charge that a franchisee or subfranchisor is required to pay or agrees to pay for the right to enter into a business or to continue a business under a franchise agreement . . . ." (Minn. Stat., § 80C.01, subd. 9.)

[12] Disclosure Requirements and Prohibitions Concerning Franchising and Business Opportunity Ventures. (16 C.F.R. §§ 436.1–436.3 (2003).)

Appellant contends that certain sums he paid to U-Haul during the course of the business relationship, such as a monthly fee for a local telephone line and directory listing, the cost of a local computer terminal, and other business expenses incidental to the U-Haul rental business, must be considered disguised franchise fees which he "indirectly" paid.[13] Specifically, he argues that he was required to pay a monthly charge for a U-Haul computer terminal ($20 per month), for a dedicated telephone line (approximately $19 to $20 per month), which he alleges were otherwise unnecessary to the operation of his business, and which were incurred only because of U-Haul's requirements. He also asserts that he was "expected" to sell "SafeMove" or "SafeTow" insurance to at least half of his rental customers, receiving no commission for these sales, and that imputed commissions on these sums were also indirect franchise fees.

The telephone line is referenced in the original Contract. Appellant agreed to pay, by commission deduction, the monthly cost of a telephone line maintained at U-Haul's discretion at his business location. U-Haul paid the acquisition and installation costs of the telephone, and the monthly charges until publication of the local telephone directory. Appellant testified that these costs averaged $19 to $20 per month. The direct costs of the telephone line were paid by appellant to U-Haul, and U-Haul then forwarded the monthly sums to the telephone company, an arrangement that allowed U-Haul to safeguard its trademark rights in the U-Haul name.

The computer terminal was provided pursuant to a separate written electronic system reporting agreement (the ESR Agreement), signed on April 21, 1998, about six months after the dealership Contract, as an addendum to the dealership Contract. Pursuant to the ESR Agreement, U-Haul provided all equipment, software, and supplies, and appellant agreed to pay $20 per month as a service fee, also paid by commission deduction. Appellant used this equipment to process credit card transactions (including transactions for his Action Rental business), U-Haul rental agreements and reservations, and to transmit weekly reports to U-Haul. Appellant argues that he was required to sign the ESR Agreement (as well as a rotation truck agreement) as a condition of continuing his U-Haul dealership. Appellant also testified he paid nothing to U-Haul at the time that he entered into the Contract, that he did not believe that the telephone charges and computer charges were fees he had

---

[13] Appellant's trial testimony was that he considered everything he paid to U-Haul, including all rental receipts net of his commissions, to be franchise fees.

to pay as a condition to becoming a U-Haul dealer, that there was no discussion regarding required use of the computer terminal before he signed the Contract, and that a U-Haul representative only "implied" that the computer terminal was required at the time the ESR Agreement was signed. He further testified that U-Haul "had been offering it [the computer system] to me for quite some time" and that he started using it in February or March 2003 after "[w]e finally decided, okay, well, let's try it and see how that works." This testimony is scarcely compelling evidence that these charges were "required"[14] by U-Haul "for the right to engage in business." As noted above, appellant's position at trial was that "every nickel" that he paid to U-Haul, for any purpose, was a franchise fee.

After consideration of the evidence, the trial court made a factual finding that the costs of the telephone line and the charges for computer equipment represented nothing more than ordinary business expenses and not an investment required by U-Haul for the right to operate a dealership, noting that, "Ordinary business expenses do not constitute such an investment or franchise fee." That conclusion is fully supported by substantial evidence as an issue of fact. Appellant argues that Business and Professions Code section 20009 placed the burden of proof on U-Haul to establish an exemption or an exception from the application from the statutes. That section, however, would first require appellant to show that the "regulations, releases, guidelines and interpretive opinions of the Commissioner of Corporations" would otherwise classify his Contract as a franchise agreement. As the trial court determined, appellant failed to make such showing.

With respect to the "SafeMove" and "SafeTow" sales, the Contract specifically provides that "Commissionable Fees" do not include sales taxes, deposits, distribution fees, Canadian duty fees, the "SafeMove" and "SafeTow" fees, or collection or credit fees. Appellant's argument, which borders on the absurd, appears to be that funds which he never received, and to which he had no contractual right, should be somehow construed to be an "investment" in his U-Haul dealership. The trial court properly found otherwise.

■ Assuming that the issue of whether any amounts paid by appellant can properly be classified as franchise fees presents mixed questions of fact and law requiring independent review (see *Crocker National Bank v. City and*

---

[14] "The Law does not include in the definition of 'franchise fee' payments which the franchisee is not required to make but which are optional and required only if the franchisee elects to purchase, lease or rent merchandise, equipment or other property from the franchisor or an affiliate of the franchisor." (Guidelines, ¶ 4(g).)

*County of San Francisco* (1989) 49 Cal.3d 881, 888–889 [264 Cal.Rptr. 139, 782 P.2d 278]), we conclude, as did the trial court, that no amounts paid by appellant, directly or indirectly, can be reasonably characterized as franchise fees. Appellant invested nothing in return for the right to enter into business with or for U-Haul. He made no required contribution of capital, made no unrecoverable investment in the franchisor, was not required to purchase any inventory, and was not required to purchase services from U-Haul in order to become a dealer. He placed none of his own funds, even the de minimis amounts required under the CFIL or the CFRA, at risk in exchange for the dealership. Our statutes define a franchise fee as a fee paid for the right to do business, not ordinary business expenses paid during the course of business. (See *Wright-Moore, supra*, 908 F.2d at p. 136.)

### C.  *Other issues raised by appellant are moot*

Both parties argue whether the other requisite elements of a "franchise" were established by the evidence. Given that lack of payment of a franchise fee is fatal to appellant's claim of a franchise agreement with U-Haul, we need not discuss the other legal requirements for a franchise, which were not specifically addressed by the trial court in its ruling. The trial court held that there was no franchise fee and thus no franchise; we affirm on this basis.

The parties have also briefed the issue of whether summary judgment was properly granted to UHI, but appellant concedes that this issue is moot if the trial court's ruling on the franchise issue is affirmed. Similarly, he acknowledges that his other related claims against U-Haul fail in the absence of a franchise agreement.

In addition, we do not have jurisdiction to review any order of the trial court on the question of attorney fees, because the trial court has not yet issued an order setting such fees, and that issue of attorney fees is apparently still pending in the trial court.

All other issues raised by appellant are therefore moot. (See *Finnie v. Town of Tiburon* (1988) 199 Cal.App.3d 1, 10–11 [244 Cal.Rptr. 581].)

## III. *DISPOSITION*

The judgment is affirmed.

Jones, P. J., and Simons, J., concurred.

On November 21, 2006, the opinion was modified to read as printed above.