[No. B221636. Second Dist., Div. Three. Oct. 21, 2010.]

1-800-GOT JUNK? LLC, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
MILLENNIUM ASSET RECOVERY, INC., Real Party in Interest.

502

---

## COUNSEL

Brown, White & Newhouse, George P. Schiavelli; Dickstein Shapiro, James Turken and Susan Page White for Petitioner.

No appearance for Respondent.

Singler, Napell & Dillon, Bryan Dillon, Bruce Napell and Jason D. Maynard for Real Party in Interest.

---

## OPINION

**KLEIN, P. J.**—Millennium Asset Recovery, Inc. (Millennium), a franchisee, is suing petitioner 1-800-Got Junk? LLC (Got Junk), the franchisor, for wrongfully terminating Millennium's franchise.[1] The franchise agreement specifies the application of the law of Washington State. Millennium seeks to enforce the choice of law provision in the franchise agreement. Got Junk contends the choice of law provision in its franchise agreement is unenforceable because there is no reasonable basis for the application of Washington law; Got Junk seeks the application of California law.[2] Following a bifurcated choice of law trial, the trial court held Washington law applies to this action.

In the instant petition, Got Junk seeks a writ of mandate directing respondent superior court to vacate its order that the law of Washington State applies to this action and to enter a new order that California law applies. We conclude the trial court properly gave credence to the choice of law provision in the franchise agreement and therefore we deny Got Junk's petition for writ of mandate.

---

[1] A "franchisee" is a person to whom a franchise is granted. (Bus. & Prof. Code, § 20002.) A "franchisor" is a person who grants or has granted a franchise. (Bus. & Prof. Code, § 20003.)

All further statutory references are to the Business and Professions Code, unless otherwise specified.

[2] We recognize this is an anomalous case—the franchisee is seeking enforcement of the franchise agreement's choice of law provision and the franchisor is seeking its invalidation.

The essential issues are (1) whether a reasonable basis existed for the inclusion of the Washington choice of law provision in the franchise agreement; and (2), if so, whether California public policy precludes application of the parties' chosen law.

Because a multistate franchisor has an interest in having its franchise agreements governed by a uniform body of law, Got Junk had a reasonable basis for inserting a choice of law provision in the franchise agreement. As for the designation of Washington law in particular, given that state's proximity to Got Junk's headquarters in Vancouver, Canada, there was a reasonable basis for the parties' choice of law.

The remaining issue is whether enforcement of the Washington choice of law provision is barred by section 20010 (California Franchise Relations Act (CFRA) (§ 20000 et seq.)). In order to protect franchisees domiciled or operating in California (§ 20015), section 20010 declares: "Any condition, stipulation or provision purporting to bind any person to *waive compliance* with any provision of this law is contrary to public policy and void." (Italics added.)

In this instance, Washington State is more protective of franchisees than California, in that Washington's Franchise Investment Protection Act (WFIPA) restricts the franchisor to *four situations* in which a franchisor can summarily terminate a franchise without providing notice and an opportunity to cure (Wn. Rev. Code § 19.100.180),[3] while the California statutory scheme provides for immediate termination without opportunity to cure *in the same four situations as well as numerous others.* (§ 20021, subds. (a)–(k).) Thus, the instant franchise agreement, by giving the franchisee superior protection under Washington law, does not require a franchisee to "waive compliance" with any provision of the CFRA. (§ 20010.) Therefore, enforcement of the instant choice of law provision does not contravene California public policy and is not barred by section 20010.

---

[3] Washington Revised Code section 19.100.180(2)(j) provides in relevant part, "a franchisor may terminate a franchise without giving prior notice or opportunity to cure a default if the franchisee: (i) Is adjudicated a bankrupt or insolvent; (ii) makes an assignment for the benefit of creditors or similar disposition of the assets of the franchise business; (iii) voluntarily abandons the franchise business; or (iv) *is convicted of or pleads guilty or no contest to a charge of violating any law relating to the franchise business.*"

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts.*

 a. *Formation of the franchise relationship.*

Defendant and petitioner Got Junk, a Delaware limited liability company, the franchisor, is a junk removal franchise business headquartered in Vancouver, British Columbia, Canada.

On December 26, 2003, plaintiff and real party in interest Millennium, the franchisee, entered into an agreement with Got Junk to operate a Got Junk franchise in various territories in the Los Angeles area, including Century City, Beverly Hills and Westwood.

 b. *Pertinent provisions relating to choice of law.*

The franchise agreement at paragraph 21.12 contains the following choice of law provision: "*Governing Law.* This agreement shall be construed and interpreted according to the laws of the state of Washington."

The franchise agreement contains an integration clause at paragraph 21.8, to wit: "Entire Agreement. This agreement *and the other documents referred to herein* or contemplated hereby set forth the entire agreement between Franchisor and Franchisee . . . ." (Italics added.)

The franchise agreement made specific reference to Got Junk's 2003 uniform franchise offering circular (UFOC). The 2003 UFOC contained the following advisements: "The franchise agreement states that Washington law governs the agreement, and this law may not provide the same protections and benefits as local law. . . . Even though the franchise agreement provides that Washington law applies, your law may supersede it in your state."

The 2003 UFOC also contains a state-specific addendum. With respect to California, the addendum provides: "The franchise agreement requires application of the laws . . . of the State of Washington.[4] This provision may not be enforceable under California law."[5]

---

[4] The franchise agreement plainly calls for the *application* of the laws of the State of Washington. Therefore, we reject Got Junk's contention the choice of law provision merely requires the contract be "construed and interpreted" according to Washington law.

[5] In addition to the choice of law provision, paragraph 21.12 contains a forum selection clause, to wit: "The King County Superior Court in Seattle or the U.S. District Court in Seattle, as appropriate, shall have *exclusive jurisdiction* to entertain any proceeding in respect of this Agreement, and Franchisee and Franchisor each attorn to the jurisdiction of such Courts in all matters related to this Agreement; provided that Franchisor may obtain relief in such other jurisdictions as may be necessary or desirable to obtain declaratory, injunctive or other relief to enforce the provisions of this Agreement." (Italics added.) However, the forum

c. *Got Junk's termination of the franchise for Millennium's alleged underreporting of revenue.*

The franchise agreement obligates the franchisee, Millennium, to pay a percentage of its gross revenue to Got Junk on every junk removal job it performs.

Effective May 11, 2007, Got Junk terminated Millennium's franchise on the grounds Millennium deliberately had not reported certain jobs and the gross revenue derived from such jobs, and had not paid to Got Junk the monies to which the franchisor was entitled under the agreement. Got Junk declared Millennium's falsifying of reports a material default of the franchise agreement and terminated the franchise *without giving Millennium an opportunity to cure the default.*

Millennium denies any wrongdoing but concedes its drivers pocketed money on at least three jobs without reporting the payments either to Millennium or to Got Junk.

2. *Proceedings.*

a. *Pleadings.*

On July 2, 2007, Millennium filed suit against Got Junk in the Superior Court of Los Angeles County. The gravamen of the second amended complaint, which is the operative pleading, is that Got Junk breached the franchise agreement by terminating the franchise without cause, in that Got Junk had no reasonable basis for its contention Millennium intentionally failed to pay amounts due under the agreement. Invoking the choice of law provision in the franchise agreement, Millennium further alleged the termination was in violation of the WFIPA (Wn. Rev. Code § 19.100.010 et seq.), specifically, section 19.100.180, which strictly limits the circumstances in which a franchisor can terminate a franchise without providing notice or an opportunity to cure. Millennium pled Got Junk's failure to give it an opportunity to cure the alleged underpayment was in violation of the WFIPA.

The second amended complaint included causes of action for breach of written contract, breach of the implied covenant of good faith and fair

selection clause in not in issue in this proceeding. Neither party seeks enforcement of the forum selection clause. Millennium brought this action in the Superior Court of the State of California for the County of Los Angeles, without objection by Got Junk. We note section 20040.5 states: "A provision in a franchise agreement restricting venue to a forum outside this state is void with respect to any claim arising under or relating to a franchise agreement involving a franchise business operating within this state."

dealing, tortious interference with prospective economic advantage and defamation. Millennium, whose sole shareholder is Brenda Cotton (Cotton), an African-American woman, further pled Got Junk acted with a discriminatory motive, in violation of the California Fair Dealership Law. (Civ. Code, § 84.)[6]

By way of relief, Millennium sought, inter alia, compensatory and punitive damages, as well as specific performance and an accounting.

Got Junk answered, generally denying the allegations and raising numerous affirmative defenses.

### b. *Millennium's first motion for summary adjudication.*

On October 2, 2008, Millennium filed its first motion for summary adjudication, directed at the cause of action for breach of written contract. Millennium contended summary adjudication was appropriate because the franchise agreement specifies Washington law shall govern, and Got Junk's termination of Millennium's franchise without giving Millennium notice and an opportunity to cure violated the WFIPA.

Because Millennium filed its operative pleading, the second amended complaint, *after* it filed the motion for summary adjudication, the trial court (Hon. Rita Miller) declined to rule on the motion for summary adjudication. The court ruled "Millennium must file a new motion for summary adjudication. Defendant . . . is entitled to oppose a new motion for summary adjudication filed by Millennium based upon the allegations contained in Millennium's Second Amended Complaint."

### c. *Millennium's second motion for summary adjudication.*

On April 28, 2009, Millennium filed another motion for summary adjudication, again directed at the cause of action for breach of written contract. Millennium contended that pursuant to the terms of the agreement, the matter was governed by Washington law, and the WFIPA permits a franchisor to terminate a franchise without providing notice and an opportunity to cure in only four situations, none of which is present here. (See fn. 3, *ante.*)

On July 13, 2009, the trial court (Hon. Morris B. Jones) denied Millennium's second motion for summary adjudication on the ground the motion, if granted, would not wholly dispose of the breach of contract claim; merely establishing a breach of contract occurred, without establishing the amount of

---

[6] Civil Code section 84 provides "no grantor . . . may terminate . . . a dealership agreement with a dealer because of any characteristic listed or defined in subdivision (b) or (e) of [Civil Code] Section 51," i.e., the Unruh Civil Rights Act.

damages incurred, is insufficient. The trial court further ruled, with respect to the issue of choice of law, that Millennium failed to meet its burden "to establish that there is a reasonable basis for the choice of Washington law."

### d. *Subsequent proceedings: bifurcated trial on choice of law.*

At a status conference on September 4, 2009, the trial court (Hon. Rita Miller) indicated it would try the choice of law issue on declarations and directed the parties to submit declarations addressing choice of law. Thereafter, the parties filed voluminous papers on the issue.

### (i) *Millennium's papers.*

Millennium's attorney, Bruce Napell, a certified franchise law specialist, filed a declaration which provided in relevant part: "I regularly review offering circulars and franchise agreements for clients, both to assist them with their decision whether or not to purchase a franchise, or to advise them in relations with their franchisor. In my experience most franchise agreements include a choice of law provision. Every one of the last ten franchise agreements I reviewed included a choice of law clause. This is typically done so that the Franchisor's lawyers can become proficient in one state's law and avoid having to learn the law of numerous other states. Choosing one state's law to apply further creates consistency in the system and helps to ensure that franchisees operate under consistent rules."

Napell noted Washington State is the closest United States jurisdiction to Got Junk's headquarters in Vancouver, Canada. Napell opined this circumstance supported the inference Washington law was chosen due to that state's proximity to Got Junk's headquarters "and because there is a benefit to a franchisor and a franchise system to having a single set of rules apply to all the agreements."[7]

Cotton also filed a declaration, stating she recalled discussing the choice of law clause with an attorney before she entered into the franchise agreement, and that she understood Washington law would govern the agreement.

---

[7] Exhibits B through K, attached to Napell's declaration, consisted of copies of the UFOC's filed by Got Junk with California's Department of Corporations for the years 2003 to 2007, as well as copies of its registration applications for those years. The trial court sustained Got Junk's objections to Millennium's request for judicial notice of said documents, on the ground the request did not meet the requirements for the court to take judicial notice. Millennium is not challenging that evidentiary ruling. Therefore, our review of Napell's declaration is confined to the portions that were admitted into evidence.

(ii) *Got Junk's papers.*

Brian Scudamore (Scudamore), founder and chief executive of Got Junk, filed a declaration disclaiming any knowledge as to why Got Junk's franchise agreement contains a choice of law provision. Scudamore stated: "I have reviewed the wording of Section 21.12 of the Agreement . . . which states in part that the Agreement shall be 'construed and interpreted according to Washington law.' *I do not have an understanding as [to] why the Agreement states that it shall be construed and interpreted according to Washington law.* [Got Junk] has never determined that Washington law provides better protections or is more beneficial to [Got Junk] or to any of its franchisees than the laws of any other state in which [Got Junk] operates." (Italics added.)

(iii) *Bifurcated trial on choice of law; trial court's ruling.*

On January 6, 2010, the trial court (Hon. Rita Miller) conducted a hearing on the bifurcated choice of law determination. At the outset, the trial court announced its tentative ruling, to wit, that Washington law applies. The trial court took judicial notice of the fact the State of Washington is the closest state to Got Junk's headquarters in Vancouver, Canada, but denied the request for judicial notice of the documents attached to Napell's declaration. After hearing argument of counsel, the trial court adopted the tentative ruling as the order of the court.

The trial court ruled in pertinent part: "There was a reasonable basis for [Got Junk] to designate Washington law as the law governing the agreement. Therefore, the test set forth in the Restatement (Second) of Conflicts of Law 187(2) is satisfied. [¶] Reasonableness is an objective standard. Therefore, Mr. Scudamore's declaration about what actually happened at some point and his subjective intent is really not much help. It does not contravene the objective reasonableness of the decision to designate Washington law. It's also puzzling that he does not say why Washington law was selected as he appears to be in a position to know. Therefore, as [Millennium] puts it, if it [were] selected by random use of a dart board, Mr. Scudamore appears to have had it in his power to say so and he failed to do so.

"This is not a summary judgment motion. This is part of the trial. This is a bifurcated court decision on choice of law, so I can consider and weigh the evidence, and I find Mr. Scudamore's evidence not too useful.

"The objective facts are that it is reasonable for a company doing business in many states to designate the laws of one state in a contract that will be used in many states. If the company's lawyers are already familiar with the laws of that one state and find them favorable, they will not have to expend

as much time and energy learning the laws of the remaining states. . . . [¶] . . . So [the] approach of choosing one state['s] specific scheme or franchise law is reasonable. It's also reasonable because it increases predictability and has potential to create greater uniformity, and through that uniformity, possibly cost savings."

The trial court indicated the matter would proceed to a trial on the merits on January 26, 2010, but that it would stay the matter if Got Junk sought writ review.

On January 14, 2010, Got Junk filed the instant petition for writ of mandate, seeking to overturn the trial court's ruling Washington law applies to the breach of contract action. We issued an order to show cause.

## ISSUES

The essential issues presented are whether a reasonable basis exists for the parties' choice of Washington law, and if so, whether enforcement of the choice of law provision is barred by section 20010.

## DISCUSSION

1. *Overview; a reasonable basis exists for the Washington choice of law provision; the instant choice of law provision is not barred by section 20010; therefore, the trial court properly held the choice of law provision is enforceable.*

In 1980, California adopted the CFRA (Stats. 1980, ch. 1355, § 1, p. 4888) to protect individuals from the loss of their investments in franchises. (*Thueson v. U-Haul Internat., Inc.* (2006) 144 Cal.App.4th 664, 673 [50 Cal.Rptr.3d 669] (*Thueson*).) The CFRA governs, inter alia, the termination of franchises (§ 20020 et seq.) and the nonrenewal of franchises (§ 20025 et seq.).

Section 20010 provides: "Any condition, stipulation or provision purporting to bind any person to waive compliance with any provision of this law is contrary to public policy and void." Therefore, the parties herein could not agree to "waive compliance" with any provision of the CFRA.

In this choice of law dispute, Millennium, the franchisee, has sought enforcement of the Washington choice of law provision in the franchise agreement. Got Junk, the franchisor, has resisted that position and insists on the application of California law. When the choice of law issue was tried in the court below, the parties focused on whether there was a reasonable basis

for the application of Washington law. Millennium argued that in the interest of franchise uniformity, the franchise agreement properly designated Washington law to apply to the franchise agreement. Got Junk, in turn, disclaimed any knowledge of why its form franchise agreement included the choice of law provision.

Remarkably, the bifurcated choice of law trial proceeded without any consideration of the CFRA, the California statutory scheme governing franchise relations. The parties and trial court overlooked the critical issue herein, namely, the impact of the CFRA, specifically, section 20010, on the enforceability of the choice of law provision in the franchise agreement.[8]

In order to obtain enforcement of the Washington choice of law provision, Millennium was required to show a reasonable basis for its inclusion in the franchise agreement. (*Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 917 [103 Cal.Rptr.2d 320, 15 P.3d 1071].) To avoid enforcement of the choice of law provision, Got Junk then was required to show the chosen law is contrary to a fundamental public policy of this state. (*Ibid.*)

As explained below, we conclude a reasonable basis existed for the inclusion of the Washington choice of law provision in the franchise agreement. Further, California public policy is not offended by the franchise agreement's granting the franchisee greater protection than what is mandated by the CFRA. Therefore, the trial court properly gave credence to the franchise agreement's designation of Washington law.[9]

> 2. *Absent a public policy exception, contractual choice of law provisions are generally enforceable.*

■ We begin with the basic premise that choice of law provisions are enforceable, unless grounds exist for not enforcing them. As our Supreme Court stated in *Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459, 464–465 [11 Cal.Rptr.2d 330, 834 P.2d 1148] (*Nedlloyd*): "In determining the

---

[8] Although the impact of section 20010 was not litigated during the choice of law trial below, the issue has been thoroughly briefed in this writ proceeding. The interpretation and application of a statute presents a question of law. (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 323, p. 370.) Therefore, the issue is properly before us. (9 Witkin, *supra*, § 406, p. 464.)

[9] " 'No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason.' " (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10].) Although the trial court resolved the choice of law dispute without addressing the public policy concerns of section 20010, because the trial court's decision is correct in result it must be upheld.

enforceability of arm's-length contractual choice-of-law provisions, California courts shall apply the principles set forth in Restatement [Second of Conflict of Laws,] section 187, *which reflects a strong policy favoring enforcement of such provisions.* [Fn. omitted.] [¶] . . . Restatement section 187, subdivision (2) sets forth the following standards: '*The law of the state chosen by the parties to govern their contractual rights and duties will be applied,* even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, *unless either* [¶] (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the [parties'] choice, or [¶] (b) *application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue* and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.' " (Italics added.)[10]

3. *Initial burden is on the party seeking to enforce the choice of law provision (here, Millennium) to show the provision is enforceable.*

In *Washington Mutual Bank v. Superior Court, supra,* 24 Cal.4th 906, the California Supreme Court set forth the parties' respective burdens on a choice of law question as follows: "if the proponent of the clause [(here, Millennium)] demonstrates that the chosen state has a substantial relationship to the parties or their transaction, or that a reasonable basis otherwise exists for the choice of law, the parties' choice generally will be enforced *unless the other side can establish* both that the chosen law is contrary to a fundamental policy of California and that California has a materially greater interest in the determination of the particular issue." (*Id.* at p. 917, italics added.)

4. *Trial court properly found Millennium showed a reasonable basis for the parties' choice of Washington law.*

Under the first part of the *Nedlloyd*/Restatement test, a freely and voluntarily agreed-upon choice of law provision in a contract is enforceable "if the chosen state has a substantial relationship to the parties or the transaction *or any other reasonable basis exists for the parties' choice of*

---

[10] The Restatement Second of Conflict of Laws states in pertinent part at section 188: "(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties . . . . [¶] (2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: [¶] (a) the place of contracting, [¶] (b) the place of negotiation of the contract, [¶] (c) the place of performance, [¶] (d) the location of the subject matter of the contract, and [¶] (e) the domicil, residence, nationality, place of incorporation and place of business of the parties."

*law." (Trust One Mortgage Corp. v. Invest America Mortgage Corp.* (2005) 134 Cal.App.4th 1302, 1308 [37 Cal.Rptr.3d 83], italics added.) In other words, even if the chosen state has no substantial relationship to the parties or the transaction, the choice of law provision is enforceable if a reasonable basis exists for the parties' choice.

### a. *It is undisputed Washington lacks a substantial relationship to the parties or the transaction.*

Millennium admitted in its papers below "there is no substantial relationship between [Millennium] or the transaction . . . and the State of Washington."

Nonetheless, as discussed below, Millennium satisfied the alternative prong of the test.

### b. *Irrespective of lack of substantial relationship to Washington State, Millennium showed a reasonable basis exists for the franchise agreement's selection of Washington law.*

As indicated, the declaration of Napell, an experienced franchise lawyer, stated there is a benefit to a franchisor and a franchise system in having a single set of rules apply to all franchisees, and because Washington State is the closest United States jurisdiction to Got Junk's headquarters in Vancouver, Canada, it was reasonable for Got Junk to have designated the law of that state in the choice of law provision.

 Further, case law has recognized it is reasonable for a franchisor to designate a single state's law to apply to all of its franchise agreements. (See, e.g., *Capital National Bank of New York v. McDonald's Corp.* (S.D.N.Y. 1986) 625 F.Supp. 874, 880 *(McDonald's); Carlock v. Pillsbury Co.* (D.Minn. 1989) 719 F.Supp. 791, 808 *(Pillsbury); Sullivan v. Savin Business Machines Corp.* (N.D.Ind.1983) 560 F.Supp. 938, 940.)

For example, in the *McDonald's* case, the court found "Because McDonald's enters into a substantial number of franchise agreements in various states, it has an interest in having those agreements governed by one body of law. Following its contractual choice of law will effectuate its intent. We will, therefore, apply Illinois law to determine the validity of the assignments under the franchise agreements." *(McDonald's, supra,* 625 F.Supp. at p. 880.)

Likewise, in *Pillsbury*, involving the franchisor of Haagen-Dazs ice cream shops, the court held "HDSC . . . has a substantial interest in the application of one state's contract laws to all of its franchise agreements, as application

of different bodies of law to various contracts would likely render the franchise system unmanageable. The need for uniform enforcement of franchise agreements has been a consideration in decisions to enforce a contractual choice of law provision. *See, e.g., Capital National Bank v. McDonald's Corp.*, [*supra*,] 625 F.Supp. 874, 880 . . . ('Because McDonald's enters into a substantial number of franchise agreements in various states, it has an interest in having those agreements governed by one body of law.'); *Sullivan v. Savin Business Machines Corp.*, [*supra*,] 560 F.Supp. 938, 940 . . . (enforcing franchise agreement's choice of New York law because 'the desire for a uniform facilitation of the conduct of trade' was valid reason for use of form contract)." (*Pillsbury, supra*, 719 F.Supp. at p. 808.)

Here, the trial court's determination a reasonable basis existed for the Washington choice of law provision is supported by Napell's declaration on behalf of Millennium, and is consistent with case law recognizing the interest of uniformity in franchise operations. Because a multistate franchisor has an interest in having its franchise agreements governed by one body of law, Got Junk had a reasonable basis for inserting a choice of law provision in the franchise agreement. Further, given Washington State's proximity to Got Junk's headquarters in Vancouver, Canada, there was a reasonable basis for the designation of that state's law in particular.

However, this discussion does not end our inquiry.

5. *The instant choice of law provision which gives the franchisee enhanced protection under Washington law is not barred by California's stated public policy.*

Even if the proponent of the choice of law provision establishes a reasonable basis for the parties' choice of law, enforcement of their choice of law provision will be denied if "the other side can establish *both* that the chosen law is contrary to a fundamental policy of California *and* that California has a materially greater interest in the determination of the particular issue." (*Washington Mutual Bank v. Superior Court, supra*, 24 Cal.4th at p. 917, italics added.) As explained below, Got Junk has failed to establish the chosen law of Washington contravenes the fundamental public policy embodied in the CFRA. Therefore, Millennium is entitled to enforcement of the instant choice of law provision.

a. *Overview of California statutory scheme.*

The CFRA, at section 20000 et seq., serves to protect California franchisees, typically small business owners and entrepreneurs, from abuses by franchisors in connection with the nonrenewal and termination of franchises. (Assem. Com. on Finance, Insurance and Commerce, Analysis of

Assem. Bill No. 295 (1979–1980 Reg. Sess.) as amended Mar. 1, 1979, p. 1.) Courts are required to construe "the CFRA *broadly to carry out legislative intent*, that intent . . . is to protect franchise *investors*—i.e., those who 'pay for the right to enter into a business.' " (*Thueson, supra*, 144 Cal.App.4th at p. 673, some italics added.)

The provisions of the CFRA "apply to any franchise where either the franchisee is domiciled in this state or the franchised business is or has been operated in this state." (§ 20015.)

■ The statutory scheme generally prohibits termination of a franchise prior to the expiration of its term, except for good cause. (§ 20020.) "Good cause shall include, but not be limited to, the failure of the franchisee to comply with any lawful requirement of the franchise agreement after being given notice thereof and a reasonable opportunity, which in no event need be more than 30 days, to cure the failure." (*Ibid.*) ■ The statutory scheme also specifies certain grounds for immediate notice of termination without the opportunity to cure. (§ 20021, subds. (a)–(k).)

> b. *Section 20010 prohibits a franchise agreement from requiring a franchisee to waive compliance with the protections of the CFRA; the instant choice of law provision, giving the franchisee superior protection under Washington law, is not barred by section 20010*

The pivotal section of the CFRA for our purposes is section 20010, an antiwaiver provision. It states: "Any condition, stipulation or provision purporting to bind any person to waive compliance with any provision of this law is contrary to public policy and void."

The essential issue presented is whether section 20010 invalidates the Washington choice of law provision in the instant franchise agreement. The parties have not cited any case law directly on point, nor has our independent research revealed any. Therefore, we look for guidance to case law construing a related statutory scheme, namely, California's Franchise Investment Law (CFIL) (Corp. Code, § 31000 et seq.).

By way of background, the stated intent of the CFIL is "to provide each prospective franchisee with the information necessary to make an intelligent decision regarding franchises being offered. Further, it is the intent of this law to prohibit the sale of franchises where the sale would lead to fraud or a likelihood that the franchisor's promises would not be fulfilled, and to protect the franchisor and franchisee by providing a better understanding of the relationship between the franchisor and franchisee with regard to their business relationship." (Corp. Code, § 31001.)

The CFIL contains an antiwaiver provision, Corporations Code section 31512, which is substantially similar to section 20010. Corporations Code section 31512 provides: "Any condition, stipulation or provision purporting to bind any person acquiring any franchise to *waive compliance* with any provision of this law or any rule or order hereunder is *void.*" (Italics added.)

*Wimsatt v. Beverly Hills Weight etc. Internat., Inc.* (1995) 32 Cal.App.4th 1511 [38 Cal.Rptr.2d 612] (*Wimsatt*), addressed the validity of a franchise agreement's forum selection clause, requiring the franchisees to sue in Virginia, in light of the CFIL's antiwaiver provision. (Corp. Code, § 31512.) *Wimsatt* observed, "One of the most important protections California offers its franchisee citizens is an antiwaiver statute which voids any provision in a franchise agreement which waives any of the other protections afforded by the Franchise Investment Law. (Corp. Code, § 31512.)" (*Wimsatt, supra,* at p. 1520.) *Wimsatt* held enforcement of the forum selection clause was not barred by Corporations Code section 31512 if the forum selection clause did "not *subvert substantive rights* afforded California citizens." (*Wimsatt, supra,* at p. 1514, italics added.) The critical inquiry was whether enforcement of the forum selection clause would "*diminish* [*franchisees'*] *rights* under the Franchise Investment Law." (*Id.* at p. 1524, italics added.) Because that issue had not been developed in the trial court or in the briefing on appeal, the matter was remanded for further proceedings in that regard. (*Ibid.*)

*Burgo v. Lady of America* (C.D.Cal., May 4, 2006, No. SA CV 05-0518) (*Burgo*) (order granting in part and denying in part motion to dismiss complaint), is consistent with *Wimsatt.* In *Burgo,* the court addressed the validity of a franchise agreement's choice of law provision calling for the application of Florida law, in light of the CFIL's antiwaiver provision. (Corp. Code, § 31512.) *Burgo* held the CFIL's antiwaiver provision "prohibits parties [from] contracting around the substantive provisions of the statutory protective scheme in question." *Burgo* determined, "a comparison of Florida and California's franchise statutes shows that Florida provides significantly less protection to franchisees. . . . Substantively, [the] CFIL is quite broad, covering material misrepresentations or omissions in either oral or written form in connection with the sale of a franchise. *See* Cal. Corp. Code § 31201. In contrast, the [Florida Franchise Act] only prohibits fraud in three scenarios: '(1) when the chances of success for a franchisee are misrepresented; (2) when the total investment for a franchise is misrepresented; or (3) when the franchisor misrepresents its efforts to establish more franchises in a given area than is reasonably expected for the given area to sustain.' *Grand Kensington,* [*LLC v. Burger King Corp.* (E.D.Mich. 2000) 81 F.Supp.2d 834,] 838 (citing Fla. Stat. § 817.416(2)). Based on the foregoing, . . . application of Florida law would be contrary to California's fundamental public policy of not permitting its franchisees to contract around California's statutory protections."

By parity of reasoning, the CFRA at section 20010 like the CFIL at Corporations Code section 31512, does not categorically prohibit choice of law provisions. Section 20010 makes void "[a]ny condition, stipulation or provision purporting to bind any person to waive compliance with any provision of" the CFRA. In other words, section 20010 only voids a choice of law provision which requires a franchisee to "waive compliance" with the protections of the CFRA. *Therefore, the critical inquiry is whether enforcement of the Washington choice of law provision would diminish Millennium's rights under the CFRA.*

A comparison of the CFRA and the WFIPA shows that Washington affords a franchisee far greater protection from summary termination of a franchise. The CFRA at section 20021, subdivisions (a) through (k), sets forth 11 grounds for immediate notice of termination, without giving the franchisee an opportunity to cure. In contrast, the WFIPA, which is the parties' chosen law, severely restricts the ability of a franchisor to summarily terminate a franchise. As set forth in footnote 3, *ante,* Washington Revised Code section 19.100.180(2)(j) authorizes a franchisor to terminate a franchise *without notice or an opportunity to cure* in only four situations: if the franchisee is adjudicated a bankrupt or insolvent; makes an assignment for the benefit of creditors or similar disposition of the assets of the franchise business; voluntarily abandons the franchise business; or is convicted of or pleads guilty or no contest to a charge of violating any law relating to the franchise business.

The instant franchise agreement, giving the franchisee superior protection from summary termination pursuant to Washington law, is not a waiver of compliance with the CFRA. California public policy is not offended if the franchisor contractually obligates itself to give notice and an opportunity to cure in situations where the CFRA would permit immediate termination of a franchise. *In other words, the public policy of this state is not offended by a franchise agreement giving a franchisee superior protection from summary termination under the chosen law of another state.* Therefore, enforcement of the instant choice of law provision is not barred by section 20010.

We further note that had the Legislature intended the restriction in section 20010 to have the absolute effect suggested by Got Junk, it could have so specified. By way of comparison, the CFRA, at section 20040.5, categorically prohibits *forum selection clauses* in franchise agreements, stating: "A provision in a franchise agreement restricting venue to a forum outside this state is void with respect to any claim arising under or relating to a franchise agreement involving a franchise business operating within this state."

The Legislature could have written section 20010 to categorically prohibit *choice of law provisions* in franchise agreements. Instead, section 20010 voids a choice of law provision only if the provision would subvert a franchisee's protections under the CFRA. In the instant case, the choice of law provision enhances the franchisee's protections. Therefore, the choice of law provision is valid.[11]

c. *Got Junk's argument that Washington law does not apply extraterritorially is unavailing.*

Finally, Got Junk contends the choice of law provision, calling for the application of Washington law, is unenforceable because "[n]owhere in WFIPA does the Washington legislature expressly declare any intent for WFIPA to apply to disputes occurring outside of Washington."

The argument is an irrelevancy. Irrespective of whether the WFIPA otherwise contains territorial restrictions on its application, the parties were free to agree that their franchise relations would be governed by Washington substantive law and they did precisely that, by way of a valid choice of law clause. Therefore, this state's superior court will adjudicate the matter pursuant to the parties' chosen law.

It is unnecessary to address any remaining arguments of the parties.

## CONCLUSION

Got Junk cannot avoid the Washington choice of law provision it included in the franchise agreement.

Because a multistate franchisor has an interest in having its franchise agreements governed by a uniform body of law, Got Junk had a reasonable

---

[11] *American Express Financial Advisors v. Yantis* (N.D. Iowa 2005) 358 F.Supp.2d 818, which voided a Minnesota choice of law provision in an Iowa franchise agreement, is inapposite. *American Express* stated, "The Iowa Franchise Act (the 'Act'), Iowa Code § 523H *et seq.*, was created to protect franchisees operating in Iowa from abuses by franchisors and to equalize the bargaining power between franchisees and franchisors. [Citation.] . . . The Act voids any choice of law provision in a franchise agreement regardless of whether the Act provides a cause of action for the injuries alleged by a plaintiff. *Id.* at § 523H.14 ('*A condition, stipulation, or provision requiring the application of the law of another state in lieu of this chapter is void.*')" (*American Express, supra*, 358 F.Supp.2d at p. 827, italics added.) Thus, *American Express* is based on the Iowa statute's blanket prohibition on choice of law provisions.

Likewise, *Taylor v. 1-800-Got-Junk?, LLC* (W.D.Wn. 2009) 632 F.Supp.2d 1048, 1051–1052, which held the Washington choice of law clause in an Oregon Got Junk franchise agreement was enforceable, is not on point because it does not involve the California statutory scheme. Our decision is controlled by the CFRA and specifically by section 20010 thereof.

basis for inserting a choice of law provision in the franchise agreement. As for the designation of Washington law in particular, given that state's proximity to Got Junk's headquarters in Vancouver, Canada, there was a reasonable basis for the parties' choice of law.

 Further, notwithstanding the CFRA, an extensive California statutory scheme governing franchise relations, the franchisor and franchisee were free to agree that their relations would be governed by another body of law more protective of the franchisee, which is the more vulnerable party to the agreement. California public policy is not offended by a franchise agreement giving a franchisee superior protection from summary termination under the chosen law of another state. The instant franchise agreement, which gave the franchisee enhanced protection from summary termination pursuant to Washington law, did not diminish the franchisee's substantive rights under the CFRA and therefore did not amount to a waiver of compliance with the CFRA. Accordingly, enforcement of the instant choice of law provision is not barred by section 20010.

## DISPOSITION

The order to show cause is discharged. The petition for writ of mandate is denied. Millennium shall recover its costs in this proceeding. (Cal. Rules of Court, rule 8.493.)

Croskey, J., and Aldrich, J., concurred.

A petition for a rehearing was denied November 5, 2010. On November 19, 2010, the opinion was modified to read as printed above. Petitioner's petition for review by the Supreme Court was denied January 12, 2011, S188566.