BOLIN, Justice.
Terex USA, LLC ("Terex"), petitions this Court for a writ of mandamus directing the Jefferson Circuit Court to enforce an outbound forum-selection clause contained in a distributorship agreement between Terex and Cowin Equipment Company, Inc. ("Cowin"), and to dismiss Cowin's action against Terex based on improper venue pursuant to Rule 12(b)(3), Ala. R. Civ. P. We deny the petition.
*815 Facts and Procedural History
Before August 2015, Cowin, a heavy-equipment dealer, had served as an authorized dealer of heavy equipment manufactured by the Liebherr Group for approximately 30 years. Cowin alleges that Terex, a heavy-equipment manufacturer, began aggressively recruiting Cowin to become a dealer of its equipment in Alabama, Georgia, and Florida. At the time, Warrior Tractor & Equipment Company, Inc. ("Warrior"), was serving as the dealer for Terex's equipment in the region. Based on assurances from Terex that Cowin would be the only Terex dealer in the territory, Cowin allowed its relationship with Liebherr Group to expire. In August 2015, Cowin entered into a distributorship agreement with Terex to sell Terex heavy equipment in Alabama, Georgia, and Florida. The agreement contained the following outbound forum-selection clause:
"The parties agree that this Agreement shall be governed by and interpreted consistent with the laws of the State of Georgia. The parties also agree that any dispute arising out of or in relation to this Agreement shall be exclusively decided by the United States District Court, Northern District of Georgia. The parties consent to the exclusive jurisdiction of the United States District Court, Northern District of Georgia or, if federal jurisdiction is lacking in such legal action, in the State Court in Atlanta, Georgia and waive any and all objections to the jurisdiction or venue of said Court."
Subsequent to entering into the distributorship agreement with Cowin, Terex entered into a new distributorship agreement with Warrior without providing notice to Cowin that Warrior would be reentering the heavy-equipment market. Cowin alleges that Terex's failure to give it notice that Warrior would be reentering the market is contrary to common industry practices. On June 2, 2017, Cowin sued Terex and Warrior, asserting various claims arising from Terex's alleged violation of the Alabama Heavy Equipment Dealer Act, § 8-21B-1 et seq., Ala. Code 1975 ("the AHEDA").
On July 27, 2017, Terex moved the trial court pursuant to Rule 12(b)(3), Ala. R. Civ. P., to dismiss Cowin's complaint, arguing that venue in Jefferson County was improper because of the forum-selection clause in the distributorship agreement designating either the United States District Court for the Northern District of Georgia or the Georgia state court in Atlanta as the proper forum for any dispute between the parties arising from the distributorship agreement. On August 15, 2017, Cowin responded to Terex's motion to dismiss, arguing that the enforcement of the forum-selection clause would violate a strong public policy set forth in the AHEDA. On August 17, 2017, Terex filed a response, arguing that Cowin was asking the trial court to reject the presumption under Alabama law in favor of outbound forum-selection clauses without binding precedent; that if the AHEDA is read in pari materia with the Alabama Motor Vehicle Franchise Act, § 8-20-1 et seq., Ala. Code 1975 ("the MVFA"), it is clear that the legislature knows how to prohibit forum-selection clauses in agreements and it did not do so in the AHEDA; and that the cases relied upon by Cowin from other jurisdictions address statutes, unlike the AHEDA, that specifically address outbound forum-selection clauses. On September 1, 2017, the trial court denied Terex's motion to dismiss. This petition followed.
Standard of Review
" 'Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do *816 so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.' Ex parte Integon Corp., 672 So.2d 497, 499 (Ala. 1995)."
Ex parte CTB, Inc., 782 So.2d 188, 190 (Ala. 2000).
"[A]n attempt to seek enforcement of the outbound forum-selection clause is properly presented in a motion to dismiss without prejudice, pursuant to Rule 12(b)(3), Ala. R. Civ. P., for contractually improper venue. Additionally, we note that a party may submit evidentiary matters to support a motion to dismiss that attacks venue. Williams v. Skysite Communications Corp., 781 So.2d 241 (Ala. Civ. App. 2000), quoting Crowe v. City of Athens, 733 So.2d 447, 449 (Ala. Civ. App. 1999)."
Ex parte D.M. White Constr. Co., 806 So.2d 370, 372 (Ala. 2001). "[T]he review of a trial court's ruling on the question of enforcing a forum-selection clause is for an abuse of discretion." Id. (citing O'Brien Eng'g Co. v. Continental Machs., Inc., 738 So.2d 844 (Ala. 1999) ).
Discussion
At the outset, we note that "[a]n outbound forum-selection clause-a clause by which parties specifically agree to trial outside the State of Alabama in the event of a dispute-implicates the venue of a court rather than its jurisdiction. See Ex parte CTB, Inc., 782 So.2d 188 (Ala. 2000) ; and O'Brien Eng'g Co. v. Continental Machs., Inc., 738 So. 844, 845 (Ala. 1999)." Ex parte Leasecomm Corp., 879 So.2d 1156, 1158 (Ala. 2003). In F.L. Crane & Sons, Inc. v. Malouf Construction Corp., 953 So.2d 366, 373 (Ala. 2006), this Court held that "an outbound forum-selection clause raises procedural issues and is governed by the law of the forum jurisdiction-in this case, the law of Alabama."
In M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), the United States Supreme Court held that, for purposes of federal law, outbound forum-selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." This Court in Professional Insurance Corp. v. Sutherland, 700 So.2d 347, 351 (Ala. 1997), adopted the Supreme Court's reasoning, stating that "a forum selection clause should be enforced so long as enforcing it is neither unfair nor unreasonable under the circumstances." This Court has stated that an outbound forum-selection clause is enforceable unless the party challenging the clause can clearly establish that enforcement of the clause (1) would be unfair on the basis that the contract was affected by fraud, undue influence, or overweening bargaining power or (2) would be seriously inconvenient for the trial of the action. Ex parte Leasecomm Corp., 879 So.2d 1156 (Ala. 2003). A party seeking to dismiss an action filed in Alabama based on the existence of an outbound forum-selection clause must initially establish the existence of a contract containing an outbound forum-selection clause. The burden then shifts to the party challenging the enforcement of the clause to establish that enforcement of the clause would be unfair or unreasonable under the circumstances. Ex parte PT Solutions Holdings, LLC, 225 So.3d 37 (Ala. 2016). This Court has noted that "[t]he burden on the challenging party is difficult to meet." D.M. White Constr., 806 So.2d at 372.
The Bremen Court identified four factors that would invalidate a forum-selection clause: " '(1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy.'
*817 Krenkel v. Kerzner Int'l Hotels Ltd., 579 F.3d [1279] at 1281 [ (11th Cir. 2009) ]." Rucker v. Oasis Legal Fin., L.L.C., 632 F.3d 1231, 1236 (11th Cir. 2011).
Terex argues in support of its petition that it has long been established in Alabama that forum-selection clauses are not void as against the public policy of Alabama. Terex further argues that the legislature has not expressed through plain language in the AHEDA its intention to enact legislation contrary to Alabama's long-established practice of holding forum-selection clauses valid and enforceable. Cowin contends that the legislature has expressed a strong public policy favoring heavy-equipment dealers that renders the outbound forum-selection clause unenforceable in this case. This Court held in Sutherland that outbound forum-selection clauses "are not void per se as against the public policy of Alabama." 700 So.2d at 350. However, this Court also acknowledged in Sutherland that the state legislature may enact statutory language that dictates the fundamental public policy of the state on a given subject. 700 So.2d at 351 ("[I]t can hardly be doubted that the legislature has the authority to enact a statute that would prohibit the enforcement of forum-selection clauses such as those at issue in this case ....").
Because the AHEDA contains no expressed public policy against outbound forum-selection clauses, we must construe the relevant sections of the AHEDA to determine whether the legislature intended such a public policy. In Blue Cross & Blue Shield of Alabama, Inc. v. Nielsen, 714 So.2d 293, 296 (Ala. 1998), this Court discussed the principles of statutory construction:
" '[When a court] is called upon to construe a statute, the fundamental rule is that the court has a duty to ascertain and effectuate legislative intent expressed in the statute, which may be gleaned from the language used, the reason and necessity for the act, and the purposes sought to be obtained.' "
(Quoting Ex parte Holladay, 466 So.2d 956, 960 (Ala. 1985).) In IMED Corp. v. Systems Engineering Associates Corp., 602 So.2d 344, 346 (Ala. 1992), this Court further stated with regard to statutory construction:
"Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect."
Additionally, various subsections of a statute are to be read in pari materia, i.e., they are to be construed together to ascertain the meaning and intent of each. Ex parte Jackson, 614 So.2d 405 (Ala. 1993).
The legislature has recognized the sale and distribution of heavy equipment as being of vital importance to the State. The AHEDA, at § 8-21B-2, Ala. Code 1975, sets forth the following legislative findings in that regard:
"The Legislature finds and declares that the distribution and sale of heavy equipment in this state vitally affects the general economy of the state, the public interest, the public safety, and the public welfare and that, in the exercise of its police power, it is necessary to regulate the conduct of heavy equipment suppliers and dealers and their representatives doing business in this state in order to prevent fraud, unfair business practices, unfair methods of competition, and other abuses upon its citizens."
(Emphasis added.) To that end the legislature enacted the AHEDA, which regulates *818 the dealings of heavy-equipment suppliers and dealers and imposes certain obligations upon the heavy-equipment suppliers for the benefit of the heavy-equipment dealers. For example, the AHEDA, at § 8-21B-4, Ala. Code 1975, prohibits a supplier from unilaterally terminating or amending a distributorship agreement without good cause; at § 8-21B-5, Ala. Code 1975, requires a supplier give a dealer 120 days' notice of its intent to amend, terminate, or not renew a distributorship agreement; at § 8-21B-8(c), Ala. Code 1975, requires a supplier to give notice to an existing dealer before entering into a distributorship agreement with a second dealer entering the same market area; and at § 8-21B-8(b), Ala. Code 1975, prohibits the supplier from engaging in activity with respect to the dealer that is arbitrary, in bad faith, or unconscionable.
Cowin points to three sections of the AHEDA where, it says, the legislature evidences a strong public policy against the enforcement of the forum-selection clause in this case. Initially, Cowin states that the AHEDA provides an express right to heavy-equipment dealers to commence an action in the State of Alabama regardless of the terms or conditions contained in a dealer's agreement. Section 8-21B-13, Ala. Code 1975, provides:
"Notwithstanding the terms, provisions, or conditions of any dealer agreement, any person who suffers bodily injury, loss of profit, or property damage as a result of a violation of this chapter may bring a civil action in a court of competent jurisdiction in this state to enjoin further violations and to recover the damages sustained by him or her together with the costs of the suit, including a reasonable attorney's fee...."
(Emphasis added.)
Specifically, Terex argues in its petition that Cowin reads the phrase "may bring a civil action in a court of competent jurisdiction in this state" in § 8-21B-13 as making the venue for violations of the AHEDA exclusive in Alabama. However, Terex contends that the language does not support that construction in that it merely grants a right to bring an action in Alabama without foreclosing the right to bring an action in another venue with competent jurisdiction. Terex further argues that the parties have the freedom of contract as to how and where their disputes are to be decided and that by the use of the word "may" in § 8-21B-13, instead of the mandatory "shall," the legislature did not impair that freedom. Thus, Terex concludes that § 8-21B-13 provides for venue in Alabama but does not foreclose other venues.
Cowin relies on two phrases in § 8-21B-13 as evidence of the legislature's intention to establish a strong public policy against outbound forum-selection clauses in the context of the AHEDA. As to the phrase "may bring a civil action in a court of competent jurisdiction in this state," Cowin argues that the use of the words "in this state" by the legislature, as opposed to merely permitting a plaintiff to bring an action in "a court of competent jurisdiction," expresses an intent that disputes arising under the AHEDA be decided in Alabama, and, it argues, that phrase-"in this state"-must be given effect. Cowin rejects Terex's contention that Cowin has construed the aforementioned phrase to mean that venue is exclusive in Alabama. Rather, Cowin argues that by using the word "may" the legislature intended for an aggrieved heavy-equipment dealer to take advantage of the protections afforded a heavy-equipment dealer under the AHEDA should it choose to do so but does not require it.
Second, Cowin argues that the plain language of the phrase "[n]otwithstanding the terms, provisions, or conditions of any dealer agreement," must be given effect *819 and permits the filing of an action in Alabama even though the dealer agreement may contain a provision to the contrary, i.e., an outbound forum-selection clause. Terex has failed to address this phrase and the effect it has when read together with the phrase "may bring a civil action in a court of competent jurisdiction in this state."
Construing the two key phrases contained in § 8-21B-13, we conclude that it is clear that (1) the legislature intended to extend to an aggrieved heavy-equipment dealer the right to bring an action in this state should it choose to do so and (2) that no contrary provision contained in a dealer agreement could foreclose the dealer's option to bring a suit in this state should the dealer choose to do so.
Cowin next contends that the terms of the AHEDA are incorporated into each dealer agreement and that they supersede any provision in a dealer agreement that is inconsistent with the AHEDA. Section 8-21B-9, Ala. Code 1975, provides:
"This chapter shall be deemed to be incorporated into every dealer agreement subject to this chapter and shall supersede and control all provisions of any dealer agreement inconsistent with this chapter."
The outbound forum-selection clause contained in the parties' distributorship agreement provides that any dispute between the parties arising out of the distributorship agreement "shall be exclusively decided" in federal court in the Northern District of Georgia or in the state court in Atlanta. Cowin contends that, because the forum-selection clause contained in the parties' distributorship agreement requires disputes between the parties to be decided in either federal court in the Northern District of Georgia or in the state court in Atlanta, it is inconsistent with a dealer's right found in § 8-21B-13 to bring an action in this state. Thus, Cowin concludes that the forum-selection clause contained in the parties' distributorship agreement is superseded by the AHEDA and is therefore unenforceable.
Cowin next argues that § 8-21B-8(d), Ala. Code 1975, prohibits a party from requiring a dealer to waive any legislative enacted protection under the AHEDA, including the right to bring an action in this state. Section 8-21B-8(d) provides:
"No supplier shall require a dealer to prospectively assent to a release, assignment, novation, waiver, or estoppel which would relieve any person from any liability or obligation under this chapter, which would limit the entitlement to recover damages under this chapter or other Alabama law, or which would waive the right to trial by jury. Any provision or agreement purporting to do so is void and unenforceable to the extent of the waiver or release...."
Terex again argues that § 8-21B-8(d) is devoid of any language addressing forum selection or venue and that that section does not make Alabama the exclusive venue for all actions brought under the AHEDA.
In Wimsatt v. Beverly Hills Weight Loss Clinics International, Inc., 32 Cal. App. 4th 1511, 38 Cal.Rptr.2d 612 (1995), the plaintiffs entered into a franchise agreement that contained an outbound forum-selection clause requiring that any action arising from a dispute under the franchise agreement be brought in Virginia. However, the California Franchise Investment Law contained an antiwaiver provision very similar to § 8-21B-8(d). In holding that the outbound forum-selection clause was invalid in light of the antiwaiver provision of the Franchise Investment Law, the court stated:
"One of the most important protections California offers its franchisee citizens is an antiwaiver statute which voids *820 any provision in a franchise agreement which waives any of the other protections afforded by the Franchise Investment Law. ( Corp. Code, § 31512.) A forum selection clause, however, carries the potential to contravene this statute by placing litigation in a forum in which there is no guaranty that California's franchise laws will be applied to a franchisee's claims. At the risk of sounding 'provincial' (and in full awareness of the increasing trend toward the nationalization and internationalization of commerce), we note the fact remains that California's ability to guarantee that its franchisees enjoy the benefits of its Franchise Investment Law extends no farther than its own borders. (... cf. Modern Computer Systems v. Modern Banking Systems (8th Cir. 1989) 871 F.2d 734, 742 (dis. opn. of Heaney, J.) ['The choice of law provision in the present case similarly affects the remedial reach of the Minnesota Franchise Act. It becomes in effect a waiver of all rights statutorily afforded to [the franchisee], a waiver rendered void by Minn.Stat. § 80C.21.'].) If a forum selection clause places in-state franchisees in an out-of-state forum which uses some balancing test (or equivalent) to determine that the law of the out-of-state forum should be used in place of California's, then a forum selection clause in a franchise agreement will have effectively circumvented California's antiwaiver statute. Indeed, in a case involving the sale of securities, this court once went so far as to say that the possibility the out-of-state forum would apply its law even in the face of a California choice of law provision or stipulation was enough to render a forum selection clause unenforceable. (See Hall v. Superior Court (1983) 150 Cal. App. 3d 411, 419, 197 Cal.Rptr. 757 [refusing to enforce Nevada forum selection clause in litigation arising out of securities transaction because a court there 'might well apply Nevada law' even in the face of a California choice of law provision or stipulation].)"
Wimsatt, 32 Cal. App. 4th at 1520-21, 38 Cal.Rptr.2d at 617.
In Wright-Moore Corp. v. Ricoh Corp., 908 F.2d 128 (7th Cir. 1990), almost identical language as that contained in § 8-21B-8(d) was found to have articulated a strong public policy that prohibited the enforcement of a choice-of-law provision[1] in a franchise agreement. That court stated:
"We agree with the district court that enforcement of the choice of law provision in the distributorship agreement would be contrary to Indiana's express public policy. Indiana has made it unlawful to enter into a franchise agreement 'requiring the franchisee to prospectively assent to a release ... [or] waiver ... which purports to relieve any person from liability to be imposed by this chapter' or to enter into an agreement 'limiting litigation brought for breach of the agreement in any manner whatsoever.' Ind. Code § 23-2-2.7-1(10). We owe deference to the district judge's interpretation of the law of the state in which the judge sits, see, e.g., Moore v. Tandy Corp., 819 F.2d 820, 823 (7th Cir. 1987), and the district judge here found that these provisions articulated a strong state policy against allowing contractual choice of law provisions to control the applicability of these provisions to Indiana franchises. The public policy, articulated in the nonwaiver provisions of *821 the statute is clear: a franchisor, through its superior bargaining power, should not be permitted to force the franchisee to waive the legislatively provided protections, whether directly through waiver provisions or indirectly through choice of law. This public policy is sufficient to render the choice to opt out of Indiana's franchise law one that cannot be made by agreement."
Ricoh Corp., 908 F.2d at 132. Cowin contends that enforcement of the forum-selection clause in this case would violate the legislature's stated public policy in § 8-21B-8(d) by contravening the protections afforded it under the AHEDA and relieving Terex of its liabilities and obligations under the AHEDA.
In further support of its petition, Terex argues that § 8-21B-8(d) should be read in pari materia with the MVFA. The MVFA, at § 8-20-4(3)(m), Ala. Code 1975, provides:
"Notwithstanding the terms, provisions, or conditions of any dealer agreement or franchise or the terms or provisions of any waiver, prior to the termination, cancellation, or nonrenewal of any dealer agreement or franchise, the following acts or conduct shall constitute unfair and deceptive trade practices:
"....
"(3) For any manufacturer, factory branch, factory representative, distributor, or wholesaler, distributor branch, or distributor representative to do any of the following:
"....
"m. To prospectively assent to a release, assignment, novation, agreement, waiver, or estoppel 1. which would relieve any person from any liability or obligation under this chapter, 2. which would require any controversy between a new motor vehicle dealer and a manufacturer to be referred to any person other than the duly constituted courts of this state or the United States, if the referral would be binding on the new motor vehicle dealer, 3. which would limit the entitlement to recover damages under this chapter or other Alabama law, 4. which specifies the jurisdiction or venues in which disputes arising with respect to the franchise shall or shall not be submitted for resolution or otherwise prohibits a dealer from bringing an action in the courts of Alabama, or 5. which would waive the right to trial by jury."
(Emphasis added.) Terex contends that, by including the language emphasized above in § 8-20-4(3)(m), relating to specification of a particular venue for resolution of disputes arising from a franchise agreement, the legislature intended to prohibit forum-selection clauses in the context of the MVFA. Terex continues that, because the legislature chose not to use express language in the AHEDA similar to that used in § 8-20-4(3)(m) of the MVFA prohibiting forum-selection clauses, the legislature did not intend to prohibit forum-selection clauses in the AHEDA.
"[T]he principle of in pari materia does not require that the statutes being analyzed share an identical subject matter. To the contrary, this Court has indicated that the subject matter of the statutes being analyzed need only be 'related,' 'similar,' or the 'same general[ly].' See James [v. McKinney], 729 So.2d [264] at 267 [ (Ala. 1998) ] ('In determining legislative intent, a court should examine related statutes.'); Ex parte Johnson, 474 So.2d 715, 717 (Ala. 1985) ('It is a fundamental principle of statutory construction that statutes covering the same or similar subject matter should be construed in pari materia.'); and *822 Willis v. Kincaid, 983 So.2d 1100, 1103 (Ala. 2007) (" '[S]tatutes must be construed in pari materia in light of their application to the same general subject matter.' " (quoting Opinion of the Justices No. 334, 599 So.2d 1166, 1168 (Ala. 1992) ) )."
City of Pike Road v. City of Montgomery, 202 So.3d 644, 651 (Ala. 2015) (plurality opinion).
We cannot say that the subject matter each act addresses is "related," "similar," or the "same generally." Section 8-20-4(3)(m) of the MVFA sets forth a definition of what constitutes unfair and deceptive trade practices under the MVFA. In contrast, § 8-21B-8(d) of the AHEDA preserves a remedy afforded heavy-equipment dealers pursuant to § 8-21B-8(d), by rendering void and unenforceable any provision or agreement that, among other things, would release or waive a person's liability or obligation under the AHEDA or limit the entitlement to recover damages under the AHEDA. Accordingly, we do not read § 8-21B-8(d)in pari materia with § 8-20-4(3)(m) to conclude that the legislature omitted express reference to venue-designating provisions in § 8-21B-8(d) because it intended for such provisions to be enforceable under the AHEDA.
The legislature has identified the distribution and sale of heavy equipment in this State as vitally affecting the general economy of the State, as well as the public interest and welfare of the State. In order to regulate the conduct of heavy-equipment suppliers and dealers, the legislature enacted the AHEDA, which granted heavy-equipment dealers certain remedial rights and protections while imposing on heavy-equipment suppliers certain obligations and burdens. The legislature granted aggrieved heavy-equipment dealers the right to bring an action under the AHEDA in this State, and no contrary provision in a dealer agreement will foreclose the dealer's right to do so. § 8-21B-13. Further, the legislature prohibited a supplier from requiring a dealer to assent to a waiver that would relieve the supplier of any liability or obligation under the AHEDA or that would limit the dealer's entitlement to recover damages under the AHEDA or other Alabama law. The legislature expressly provided that any provision or agreement purporting to do so would be void and unenforceable. § 8-21B-8(d). Finally, the legislature provided that these provisions of the AHEDA are "deemed to be incorporated into every dealer agreement subject to this chapter and shall supersede and control all provisions of any dealer agreement inconsistent with this chapter." § 8-21B-9.
Although outbound forum-selection clauses are not expressly mentioned in the AHEDA, we are persuaded by the foregoing provisions of the AHEDA that the legislature has expressed a strong public policy against any provision in a dealer agreement that would foreclose a dealer's right to seek redress under the AHEDA in the State of Alabama. An outbound forum-selection clause is exactly the type of provision the legislature intended to prohibit because it would undermine the remedial measures and protections the legislature clearly intended to afford heavy-equipment dealers under the AHEDA; this is especially so as to the outbound forum-selection clause in this case, which also contains a choice-of-law provision designating Georgia law as controlling.
Conclusion
We conclude that Terex has failed to establish a clear legal right to the relief sought, and we deny its petition for a writ of mandamus.
PETITION DENIED.
Stuart, C.J., and Parker, Main, Wise, and Mendheim, JJ., concur.
Shaw and Bryan, JJ., concur in the result.
Sellers, J., dissents.

The provision here also contained a choice-of-law provision, providing that the distributorship agreement "shall be governed by and interpreted consistent with the laws of the State of Georgia." Cowin has not directly challenged the enforceability of the choice-of-law provision.